# No. 24-4193

# United States Court of Appeals
## for the
# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

— v. —

JESSIE LEROY GLASS, JR.,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT STATESVILLE

# OPENING BRIEF OF APPELLANT

MELISSA S. BALDWIN
Assistant Federal Public Defender
FEDERAL PUBLIC DEFENDER
  FOR THE WESTERN DISTRICT
  OF NORTH CAROLINA
1 Page Avenue, Suite 210
Asheville, NC 28801
(828) 232-9992

*Counsel for Appellant*

CP COUNSEL PRESS    (800) 4-APPEAL • (810977)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................................iii

Introduction ............................................................................... 1

Jurisdictional Statement ............................................................. 2

Statement of the Issues ............................................................... 3

Statement of the Case ................................................................. 3

    A.    The Investigation ............................................................. 3

    B.    The government charges Glass with child-pornography offenses relating to images found on the LG phone seized from the home ............................................................................ 9

        1.    Glass moves to suppress evidence obtained with the search warrant ................................................ 9

        2.    The Jury Trial ................................................... 12

    C.    The district court sentences Glass to 180 months on each count and imposes restitution and a $5,000 assessment..................................... 16

Summary of Argument ............................................................... 17

Argument.................................................................................. 21

    I.    The government violated the Fourth Amendment under *Franks v. Delaware* by submitting a warrant application that recklessly omitted material information ................... 21

        A.    Standard of review ........................................... 22

        B.    Lowrance's affidavit omitted information with a reckless disregard of whether doing so would mislead the magistrate ............................................. 23

            1.    Lowrance omitted that the report Glass had contraband came from his estranged wife with a history of stealing and providing inaccurate information to the police about Glass ................ 24

        2.     Circumstantial evidence that Lowrance knew his omissions created a substantial and unjustified risk of misleading the magistrate establishes *Franks'* reckless disregard .................................................................. 26

        3.     The evidence demonstrated that Lowrance knew there was a substantial risk of misleading the magistrate by excluding the information casting doubt on the reliability of the report that Glass had contraband ..................................................... 31

   C.    The omissions were material because an unreliable source's uncorroborated allegation that Glass' cell phone contains contraband does not supply probable cause to search Glass' home .......................................................... 40

II.    Two of the receipt convictions should be vacated under the Double Jeopardy Clause .............................................................. 45

   A.    Standard of review ......................................................... 45

   B.    The convictions are multiplicitous because all three counts charged receiving unparticularized child pornography on the same date and the jury was not instructed to find a unique image for each count ......................... 46

III.   The $5,000 assessment under 18 U.S.C. § 2259A is erroneous .............. 50

   A.    Standard of review ......................................................... 50

   B.    There is no on-the-record explanation of the statutorily-required factors for determining the assessment amount ............. 50

Conclusion .................................................................................. 52

Request for Oral Argument ............................................................ 52

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Ball v. United States,*
470 U.S. 856 (1985)..................................................... 49

*Borden v. United States,*
593 U.S. 420 (2021)..................................................... 27

*Farmer v. Brennan,*
511 U.S. 825 (1994)...................................................28, 29

*Franks v. Delaware,*
438 U.S. 154 (1978)................................................... *passim*

*Giordenello v. United States,*
357 U.S. 480 (1958)..................................................... 21

*Illinois v. Gates,*
462 U.S. 213 (1983)................................................... *passim*

*Jiminez v. Mary Washington College,*
57 F.3d 369 (4th Cir. 1995).......................................23, 25

*Lefebvre v. Lefebvre,*
199 Cal. App. 4th 696 (2011)........................................ 35

*Miller v. Prince George's County, MD,*
475 F.3d 621 (4th Cir. 2007).......................................28, 30

*Ornelas v. United States,*
517 U.S. 690 (1996)..................................................... 40

*State v. Cowdin,*
25 Kan.App.2d 176 (1998)............................................ 42

*State v. Huebner,*
222 N.E.3d 1186 (Ohio 2023)....................................... 35

*State v. Olson,*
314 Mont. 402 (2003) ...............................................41, 42

*United States ex rel. Schutte v. SuperValu Inc.,*
598 U.S. 739 (2023)..................................................... 28

*United States v. Ajayi,*
808 F.3d 1113 (7th Cir. 2015)................................................................. 49

*United States v. Amaechi,*
991 F.2d 374 (7th Cir. 1993)................................................................. 35

*United States v. Bell,*
585 F.3d 1045 (7th Cir. 2009)................................................................. 35

*United States v. Benoit,*
713 F.3d 1 (10th Cir. 2013)................................................................46, 48, 49

*United States v. Blue,*
877 F.3d 513 (4th Cir. 2017)................................................................20, 50, 51

*United States v. Carter,*
564 F.3d 325 (4th Cir. 2009)................................................................. 51

*United States v. Clark,*
935 F.3d 558 (7th Cir. 2019)................................................................29, 35

*United States v. Clemons,*
2023 WL 3018426 (4th Cir. 2023)................................................................. 52

*United States v. Colkley,*
899 F.2d 297 (4th Cir. 1990)................................................................18, 28, 29

*United States v. Dorman,*
496 F.2d 438 (4th Cir. 1974)................................................................. 29

*United States v. Gifford,*
727 F.3d 92 (1st Cir. 2013)................................................................32, 33

*United States v. Griffith,*
867 F.3d 1265 (D.C. Cir. 2017)................................................................43, 44

*United States v. Haas,*
986 F.3d 467 (4th Cir. 2021)................................................................30, 31

*United States v. Helton,*
35 F.4th 511 (6th Cir. 2022)................................................................. 42

*United States v. Hodges,*
705 F.2d 106 (4th Cir. 1983)................................................................. 42

*United States v. Lalor,*
996 F.2d 1578 (4th Cir. 1993)................................................................. 43

*United States v. Lewis,*
  18 F.4th 743 (4th Cir. 2021) ........................................................ 22

*United States v. Lockhart,*
  947 F.3d 187 (4th Cir. 2020) ........................................................ 45

*United States v. Lull,*
  824 F.3d 109 (4th Cir. 2016) ................................................ *passim*

*United States v. Martinez-Melgar,*
  591 F.3d 733 (4th Cir. 2010) ........................................................ 25

*United States v. Mora,*
  989 F.3d 794 (10th Cir. 2021) ...................................................... 43

*United States v. Peggs,*
  2023 WL 55004 (4th Cir. 2023) .................................................... 52

*United States v. Perkins,*
  850 F.3d 1109 (9th Cir. 2017) ............................................... *passim*

*United States v. Provance,*
  944 F.3d 213 (4th Cir. 2019) ........................................................ 50

*United States v. Pulley,*
  987 F.3d 370 (4th Cir. 2021) ........................................................ 22

*United States v. Rajaratnam,*
  719 F.3d 139 (2d Cir. 2013) .................................................... 22, 32

*United States v. Schnittker,*
  807 F.3d 77 (4th Cir. 2015) ..................................................... 46, 49

*United States v. Slocum,*
  106 F.4th 308 (4th Cir. 2024) ...................................................... 46

*United States v. Smith,*
  54 F.4th 755 (4th Cir. 2022) ........................................................ 49

*United States v. U.S. District Court,*
  407 U.S. 297 (1972) ..................................................................... 17

*United States v. Wilhelm,*
  80 F.3d 116 (4th Cir. 1996) .......................................................... 23

*United States v. Williams,*
  405 F.2d 14 (4th Cir. 1968) .......................................................... 29

*Zappin v. Cooper*,
  2022 WL 985634 (S.D.N.Y. Mar. 31, 2022) ..................................................... 34

*Zurcher v. Stanford Daily*,
  436 U.S. 547 (1978) ......................................................................................... 40

**Statutes and Other Authorities:**

U.S. Const., amend. IV ........................................................................... *passim*

U.S. Const., amend. V ................................................................................... 46

18 U.S.C. § 2252A(a)(2) ........................................................................... 9, 45

18 U.S.C. § 2252A(a)(5)(B) .............................................................................. 9

18 U.S.C. § 2252A(b)(1) ........................................................................... 9, 45

18 U.S.C. § 2252A(b)(2) .................................................................................. 9

18 U.S.C. § 2259A ................................................................................... *passim*

18 U.S.C. § 2259A(a)(1) ................................................................................ 50

18 U.S.C. § 2259A(c) ............................................................................... 20, 50

18 U.S.C. § 3231 ............................................................................................. 2

18 U.S.C. § 3553(a)(1) .................................................................................. 51

18 U.S.C. § 3553(a)(7) .................................................................................. 51

18 U.S.C. § 3572(a)-(b) .................................................................................. 51

18 U.S.C. § 3742 ............................................................................................. 2

28 U.S.C. § 1291 ............................................................................................. 2

Jerome Hall, *General Principles of Criminal Law* 115 (2d ed. 1960) .............. 28, 29

Wayne LaFave, *Search & Seizure* § 3.3(b) (6th ed.) .......................................... 35

Wayne LaFave, *Substantive Criminal Law* § 5.4(d) (3d ed.) ............................... 29

Wayne LaFave, *Substantive Criminal Law* § 5.4(f) (3d ed.) ............................... 28

# Introduction

The Fourth Amendment's "obvious assumption" is that the government "will [make] a *truthful* showing" when it applies for a warrant to search a residence for evidence of criminality. *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978) (emphasis in original). Detective Lowrance, who applied for a warrant to search Jessie Glass' home, violated that requirement when he told the magistrate that a known informant reported observing child pornography on Glass' cell phone and that Glass had been investigated for similar reports in 2012 and 2016 but withheld information that the informant was Glass' estranged wife, who blamed Glass for her having lost custody of her children, had pending misdemeanor larceny charges, and—most critically—had lodged similar accusations in 2016 and 2017 resulting in no arrest and the other closed with an affirmative determination the accusation was unfounded.

By withholding information that cast significant doubt on the informant's credibility and reliability, Lowrance falsely conveyed to the magistrate that the contraband report came from "an unquestionably honest citizen," *Illinois v. Gates*, 462 U.S. 213, 233 (1983), rather than a biased source with a history of falsely accusing Glass. Had Lowrance truthfully presented the facts about the informant and the rejection by law enforcement of her prior accusation, the application would not have demonstrated probable cause to search the residence.

This Court should reverse the district court's denial of Glass' suppression motion and vacate his convictions because a search undertaken with a deceptively-

1

obtained warrant is no different than a search conducted without a warrant, and no exception to the warrant requirement applies here. *Franks*, 438 U.S. at 156.

Alternatively, this Court should order a resentencing because two of Glass' three convictions for receiving child pornography violate double jeopardy and cannot be punished separately, and the district court also erred when it ordered a $5,000 assessment under 18 U.S.C. § 2259A without first considering the statutorily-required factors for imposing such a penalty.

## Jurisdictional Statement

The United States District Court for the Western District of North Carolina had jurisdiction over this criminal case under 18 U.S.C. § 3231. The district court entered a final judgment on April 1, 2024, JA1314-1322, which Glass timely appealed that same day, JA1323. This Court thus has jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## Statement of the Issues

1. Whether an officer seeking a warrant violates *Franks* by withholding information that their informant in a sex-offense investigation is the estranged spouse of the person named in the search warrant, is herself facing criminal charges, and has a history of making false sex-offense accusations against her husband?

2. Whether Glass's three receipt-of-child-pornography convictions were multiplicitous when the government neither charged, nor secured a jury determination, that Glass received three unique visual depictions?

3. Whether the court abused its discretion by failing to provide an on-the-record explanation of the statutorily-required factors when it imposed a $5,000 assessment under 18 U.S.C. § 2259A?

## Statement of the Case

### A. The Investigation.

In December 2019, Glass' estranged wife, April Glass, submitted a cyber tip to the Iredell County, North Carolina, Sheriff's Department accusing Glass of having "a massive amount of child porn saved on his phone." JA409-410. Lowrance would secure a search warrant based on this tip, JA319-334, but this was not the first time that April Glass had accused her husband of engaging in criminal activity.

In 2016, April Glass texted her mother, who lived in Virginia, a series of photos that appeared to be child pornography photos on a cell phone that April Glass

claimed belonged to Glass. JA306-308. Glass' mother-in-law reported the photos to law enforcement. JA306. A Virginia State Police officer investigated this report, interviewing April Glass and her mother, as well as Glass, and searching a camera's micro-SD card that April Glass provided. JA159-161, JA164-171, JA186. Police closed that investigation because the only prosecutable Virginia crime was April Glass distributing child pornography (which was declined), and the North Carolina law-enforcement agencies contacted by the Virginia officer declined to investigate the allegations. JA175, JA188, JA195.

Then, in 2017, April Glass again accused Glass of having "tablets . . . full of child porn" and marijuana at his North Carolina residence. JA314. This time the Iredell County Sheriff's Department investigated April Glass' allegation. JA314. Police promptly began their investigation, with three officers visiting Glass' residence the day after the accusation was made. JA209, JA314, JA402-403. The officers encountered Glass, who consented to a search of his home, as well as his tablet computer. JA402-405. After two officers searched the home, no drugs were found, nor any electronic devices other than Glass' tablet. JA215-216. That tablet was seized by an officer for further analysis when he saw pornographic websites on it. JA403.

When officers sought a search warrant for the seized tablet, Lowrance assisted with drafting. JA211. The warrant was issued. JA355-360. And Lowrance performed the forensic search and found no evidence of illegal activity. JA66-67.

The 2017 investigation found no evidence to substantiate April Glass' report, no arrest or charges were brought, and the investigation was closed as unfounded. JA206; JA214; JA346-354.

Then, in December of 2019, April Glass again told police that Glass' phone contained a video and over 100 photos of children who were nude or being sexually abused. JA409-410. This report, made through an online tip, provided a possible password for a particular Google account, as well as Tumblr and Wickr account names, that Glass purportedly used. JA409. She also indicated that she had left Glass, had moved to a different state, and wanted to remain anonymous. JA409-410. She claimed Glass and his father had lied about her, Glass had photographed himself holding a knife to her throat, the father had recently held her against her will until she threatened to call 911, and they had accused her of stealing their truck and getting into an accident. JA409-410. And the tip acknowledged this was her third criminal accusation against her husband but claimed that Glass destroyed evidence to prevent police from substantiating her allegations. JA410.

Lowrance was tasked to investigate the tip. JA220. He looked up Glass in law-enforcement databases, where he learned that Glass was involved in a 2012 case[1] and the 2016 Virginia investigation. JA229. Lowrance reached out to the officer who

---

[1] The 2012 case was for charges of forcible sodomy against a minor that were dismissed following an acquittal in a bench trial. JA347, JA325, JA361.

5

handled the 2016 investigation to discuss that case and get copies of her reports. JA222-223.

After receiving the tip, Lowrance also reached out to April Glass and spoke with her on the phone, during which she claimed that "whenever she had [Glass'] phone, she opened it up and saw several images of child pornography." JA220-221. Following the call, he asked the Virginia officer who had previously interviewed April Glass about her 2016 allegations to obtain an in-person statement from April Glass about her latest 2019 allegation. JA222-224, JA231, JA275.

In-person, April Glass stated that sometime "[i]n December of 2019," Glass made sadomasochistic remarks to her and was acting strangely, so she looked at his Samsung Galaxy S9 cell phone and saw child pornography. JA322-323, JA407-408. She claimed that there were at least 50 photos on his phone and that she last saw them at the end of December 2019. JA322-223. She described the images as photos of prepubescent females who were nude or showing their genitalia, photos of pant-less minors under 10 years old, an infant performing oral sex on an adult male, a video of man having intercourse with a prepubescent female, someone appearing to touch the genitalia of a toddler with a bag over the child's head, and a photo of a nude family where the children had just hit puberty. *Id.* April Glass also claimed that at some unspecified time she accessed Glass' phone and saw exchanges between Glass and young girls on Tumblr in which he tried to get them to send photos on Wickr. JA323. And Glass told her that the files downloaded for no reason. JA323.

In the weeks leading up to Lowrance submitting the warrant application, Glass complained to him multiple times about her estranged husband. JA395-96; JA413. For example, April Glass told Lowrance in a phone call that Glass was mad at her for an assault arrest in Yadkin County and she had "told him off." JA395-96. Lowrance contacted Yadkin County law enforcement, but there was no record of charges against Glass. *Id.* April Glass also emailed Lowrance that she wanted alimony from Glass and that she blamed him for losing custody of her children. JA413.

Before submitting the warrant application, Lowrance also looked up April Glass in a database, which showed she had a pending misdemeanor larceny charge. JA225. About a week before submitting the warrant application, he also received a call from an officer who had stopped April Glass for a larceny from Wal-Mart. JA296-297; JA390-394; JA395-396.

About six weeks after April Glass reported her husband to law enforcement in December of 2019, Lowrance applied for a warrant to search for evidence of child pornography crimes and seize any electronic devices or mediums capable of storing images at Glass' residence. JA319-334. The application relied on Lowrance's asserted general knowledge concerning persons involved with child pornography and the nature of electronically stored information, JA323-329; the information provided by April Glass concerning the alleged presence of child pornography on Glass' phone in December 2019; and the existence of similar reports in 2012 and 2016. JA322-323

(application excerpt); JA229-232 (Lowrance's testimony on the excerpt supplying probable cause). The Magistrate Judge issued the search warrant. JA319-334.

Lowrance's application did not make *any* mention of the 2017 investigation into April Glass' unfounded allegation. JA322-323. The application also did not identify April Glass as Glass' estranged spouse, who blamed him for losing custody of her children, nor disclose that she had pending misdemeanor larceny charges, and excluded that the 2012 charges were dismissed following an acquittal and the 2016 investigation ended with no arrests or charges. *See generally* JA322-323.

Police executed the warrant at the home where Glass lived with his father. JA319; JA747; JA1004. During the search, police found four cell phones and two laptops. JA333. They found child pornography on only one device—the LG cell phone that was found on the kitchen countertop. JA723-725; JA831; JA970-771. The phone was near a couch someone appeared to sleep on with the nearby coffee table holding a container of personal effects, including mail addressed to Glass. JA723-727.

Glass was not home when the warrant was executed, so Lowrance sent another officer to Glass' workplace to collect his cell phone. JA779-781. Glass, when confronted by the officer, turned over his Samsung S9 Galaxy cell phone. JA782-785.

Glass was arrested the day after the warrant's execution. JA746. During his post-arrest interview, Glass acknowledged keeping his belongings at the residence where the LG phone was found. JA747. The LG phone's contents led to Glass' federal prosecution.

## B. The government charges Glass with child-pornography offenses relating to images found on the LG phone seized from the home.

The child pornography found on the LG phone led the government to charge Glass with three counts of receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1), and one count of possessing child pornography involving a minor under 12 years old, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). JA15-17.

Each receipt count charged that "in Iredell County…the defendant…knowingly received any child pornography," but Count One alleged an offense "[o]n or about February 4, 2020," Count Two's date was "[b]etween on or about January 8, 2020 and February 4, 2020," and Count Three's dates was "[b]etween on or about January 8, 2020, and on or about February 5, 2020[.]" JA15-16.

### 1. Glass moves to suppress evidence obtained with the search warrant.

Glass moved to suppress the evidence obtained from the search warrant, arguing that Lowrance procured it through a deceptive application that omitted material facts and thus violated the Fourth Amendment under *Franks*. JA49-105. The district court found that Glass was entitled to an evidentiary hearing to prove his claim. JA140-155.

At the *Franks* hearing, Lowrance admitted that when drafting the application he knew:

- April Glass was Glass' estranged wife, JA242;

- April Glass had complained about her husband in emails to him, JA248-249;

- April Glass had two pending misdemeanor larceny charges, JA296-297;

- The 2016 investigation involving Glass resulted in no arrest or charges[,] JA235-237; and

- April Glass had previously accused Glass, in 2017, of possessing child pornography and drugs, which was investigated and found to be inaccurate, JA238-239, JA282, JA284-286.

Lowrance denied that he was trying to hide the excluded information from the reviewing magistrate judge and claimed he omitted it because he believed it was not relevant to probable cause even though he relied on prior investigations of Glass to support probable cause. JA237-238; JA240-241; JA286.

The district court denied the suppression motion. JA472-488. The denial noted that a *Franks* violation requires the defendant to make a two-part showing: (1) "intentionality[,]" i.e., that the affiant omitted information with the intent to mislead the magistrate judge or with reckless disregard for whether such omissions would make the affidavit misleading, and (2) "materiality[,]" i.e., the omitted information's inclusion in the affidavit would defeat probable cause. JA478-789.

The court agreed that Lowrance knew about April Glass having pending misdemeanor larceny charges and that she had made an unfounded report to police in 2017 that Glass was engaging in criminal activity but excluded this information from his application. JA479-481. But it rejected that Lowrance omitted April Glass' identity as Glass' estranged spouse or the dispositions of the 2012 and 2016 investigations

involving Glass. JA479-480. Rather, the court believed that Lowrance implicitly included these facts through his statements that "Ms. Glass lived in a different state from the Defendant" and that "the Defendant had been investigated in Virginia for similar reports in 2012 and 2016." JA480; JA475.

The court found that Glass did not demonstrate Lowrance's omissions were made with the necessary reckless disregard. JA479-483. According to the district court, "[a]n officer acts with reckless disregard when he fails to inform the Judge of facts he *subjectively* knew would negate probable cause[,]" JA480 (emphasis in original), and this may not be proven inferentially. *See* JA480 ("An inference of intentionality is [ ] insufficient"). Under this framework, the district court found that the Defendant "presented *no* evidence" that Lowrance omitted the information with reckless disregard. JA483 (emphasis added). Glass' circumstantial proof of intentionality was rejected by the court because it believed this would impose negligence liability, JA482-483. As a result, the court found the defense offered "no evidence" contradicting Lowrance's generic denial, which the court credited, and the Defendant, as the party with the burden of proof, "c[ouldn't] beat something with nothing." JA481.

The district court also rejected that April Glass' criminal history and prior inaccurate reports about her husband did not alter the probable cause calculus. JA483-485. The court acknowledged that, "[p]lainly, the fact that Ms. Glass' 2017 report was determined to be 'unfounded' somewhat diminishes her reliability." JA485. But it found that probable cause remained based on the tip's content and the fact that the

11

Virginia officer who interviewed April Glass found her credible. JA485-486. Although the Virginia officer testified that she found April Glass credible at the 2023 *Franks* hearing, JA172, this information was not included in the affidavit submitted by Lowrance in 2020. *See* JA319-334. Indeed, the record does not disclose if Lowrance was even aware of the Virginia officer's credibility assessment at the time the affidavit was submitted. *See generally* JA159-302.

### 2. The Jury Trial.

At a jury trial, the government contended that Glass had two phones—his "clean" Samsung phone and his "dirty" LG phone. JA1068. Although Glass' Samsung phone contained some child pornography, this content was not accessible to the user. JA830-831, JA944. The government's prosecution was solely for the child pornography located on the LG phone, which the government linked to Glass through his Samsung phone. JA1034-1048.

The government called six witnesses. First, the crime scene investigator who photographed the residence's layout prior to the search and the evidence found from the search, including the LG phone with child pornography. JA717-735. Second, the case's lead investigator, Lowrance, testified about receiving a tip that led to getting a search warrant and the LG's phone seizure, as well as Glass' post-arrest admission that his belongings were in the residence where the LG phone was found. JA736-779. The third witness was the officer who testified about seizing the Samsung S9 Galaxy cell phone from Glass' person, at his workplace. JA779-787. The fourth witness was a

12

telecommunications employee who testified about the phone records for Glass' mother's landline phone. JA787-792. The fifth witness was a local Charlotte law enforcement officer who extracted the data from both the LG phone and Glass' Samsung S9 Galaxy phone. JA792-812. The sixth witness was the computer forensics analyst who reviewed the data extracted from the LG and Samsung S9 Galaxy phones. JA812-863; JA897-993.

The government presented evidence that the LG phone contained child pornography, which included 7 video clips. *See generally* JA914-930.

The government presented evidence that linked the LG phone to Glass through the Samsung Galaxy phone. For example, in January of 2020, the Samsung autofilled "Jessie Glass" and the LG's phone number. JA1124. The Samsung had an account using "randyday@gmx.com" and the LG phone's associated email account was "randyday794@gmail.com." JA908. Some of the inaccessible photos found on the Samsung were similar to those found on the LG phone. *E.g.,* JA921-923 (Exhs. 19 and 21A), JA926-928 (Exhs. 31 and 33A), JA928-929 (Exhs. 37 and 39A).

The Samsung phone had also texted MEGA links to "Mom." JA876. "MEGA" is a file sharing website that is often used to view or share child pornography. JA849-850. And the number for "Mom" was to a landline, which would not receive any text messages. JA788-792, JA848-849, JA876. The computer forensics analyst followed the texted MEGA links to two pages, each of which contained a gallery of downloadable files that included child pornography. JA850-857. The government introduced

exhibits that showed two child pornography videos the analyst found on the texted MEGA link (Exhs. 16 and 24) mirrored two videos found on the LG phone (Exhs. 14 and 19). JA917-923.

And the government linked Glass to the Samsung Galaxy phone by his physical possession, as well as showing that the Samsung phone contained a photo of Glass' driver's license, a copy of his paystub from October and November of 2019, a resume for Glass, a selfie of Glass taken on January 7, 2020, and an outgoing text to "jim" that stated: "Hello father. Tis I…jr…." JA882-884, JA842, JA1119.

In its closing, the government argued that Glass owned and used the Samsung phone and whoever controlled the Samsung phone also used the LG phone. JA1034, JA1048. At one point, the government referenced the clip in Exhibit 10, downloaded on February 3 at 8:51 PM, in reference to "Count One [ ] the easiest, simplest count." JA1041. And Count Two involved "more child pornography[,]" and then noted that video clip in Exhibit 13 was downloaded on February 3 at 9:15 PM. *Id.* The government referenced Count Three before directing the jury to the video in Exhibit 19, downloaded at 9:54 PM on February 4. JA1039. Following this, the government reminded the jury that the specific date alleged in the indictment need not be proven, just a date near it. JA1041. When the government moved to Count Four in its argument, it told the jury that the first two elements requiring them to prove Glass knowingly possessed any material that contained an image of child pornography was "legal mumbo jumbo" for simply proving that the LG phone contained child

pornography. JA1042. The government then directed the jury to Exhibits 28, 31, 37, and 41, which were "for the possession count, not the receipt count." JA1043. And the government pointed to the infant in Exhibit 41 to support finding that the possessed child pornography involved a minor younger than 12 years old. JA1043-1044.

The district court instructed the jury that "the law" comes from him. JA. So, if an attorney's argument on the law differed from the court's statement, the jury must follow the court's legal instructions. JA1027.

The court read Count One to the jury and provided that Counts Two and Three were the same except for the alleged date. JA1070-1071. As to the elements the government had to prove for Counts One through Three, the Court stated: that "on a date reasonably near the date or dates alleged in the indictment," (1) the defendant knowingly received child pornography as alleged in the bill of indictment, (2) the interstate commerce jurisdictional element, and (3) when the defendant received the child pornography, he knew it was child pornography." JA1071-1072. The court defined "child pornography" as simply "any visual depiction…of sexually explicit conduct, where the production involves the use of a minor engaging in sexually explicit conduct." JA1073.

The court did not instruct that the jury find a unique visual depiction for each of the three receipt counts. *See generally* JA1069-1077. And it told the jury that: "[I]f you find from the evidence that each of the essential elements of a count has been

15

proven beyond a reasonable doubt…then you must find the defendant guilty of the crime charged under that count." JA1081.

The jury returned a verdict of guilty on all counts, including the three receipt counts. JA1241-1242.

## C. The district court sentences Glass to 180 months on each count and imposes restitution and a $5,000 assessment.

At sentencing, the district court calculated a recommended Guidelines range of 135 to 168 months in prison. JA1415. The court, upon motion by the government, upwardly varied to impose a total sentence of 180 months. JA1417.

As to the sentence's financial components, the district court ordered a $6,000 restitution award to victims of the offense and a $5,000 assessment under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 (codified at 18 U.S.C. § 2259A). JA1319. The Presentence Report had noted that Glass was "subject to" up to a $17,000 assessment under 18 U.S.C. § 2259A, but did not recommend any particular amount. JA1351. The defense objected to any assessment under 18 U.S.C. § 2259A, arguing that Glass is effectively indigent, he has a limited earning capacity, and any income he generates would be exhausted by making restitution payments. JA1374. The government requested that the court "award something, but a minimal amount." JA1301. The defense argued against financial penalties given Glass' medical condition, which included diabetes causing multiple toes to be amputated after

contracting a MRSA infection in pretrial detention, and he would be 65 years old upon release. JA1257, JA1309-1310.

The district court's only statement on the § 2259A assessment dispute was that it "d[id] think that he could and should be able to pay some assessment with respect to Section 2259A and would set that special assessment at $5,000 to be paid in $50 installments[,]" JA1310.

The district court subsequently entered its judgment with a conviction on all four counts, JA1314-1322, and this timely appeal followed.

## Summary of Argument

The Fourth Amendment to the Constitution guarantees individuals the right "to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., Amend. IV. "[T]he very heart of the Fourth Amendment directive" is that "[p]rior review by a neutral and detached magistrate" is required before law enforcement may inva[de]...a citizen's private premises or conversation." *United States v. U.S. District Court*, 407 U.S. 297, 316, 318 (1972). And an "obvious assumption" underlying this protection is that the affiant makes a "*truthful* [factual] showing" when applying for a search warrant. *Franks*, 438 U.S. at 164-65 (emphasis in original).

An affiant violates his obligation to truthfully present the facts and circumstances underlying the existence of probable cause to a neutral magistrate by intentionally or recklessly including false statements or misleading omissions. *Id.* at 165, *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990). If stripping out false statements and factually eliminating misleading distortions leaves the affidavit without probable cause, than "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks*, 438 U.S. at 155-56. This two-part showing—the affiant intentionally or recklessly misled the magistrate and the materiality of the false or omitted information to probable cause—must be shown by the defendant by a preponderance of the evidence. *Id.*

Glass demonstrated that Lowrance violated the Fourth Amendment under *Franks* by securing a search warrant for his home with a recklessly misleading affidavit. Lowrance's affidavit deceptively portrayed April Glass as "an unquestionably honest citizen[,]" *Gates*, 462 U.S. at 233, whose report that Glass' cell phone contained child was corroborated by Glass being investigated for similar reports in 2012 and 2016. It did so by omitting that April Glass was Glass' estranged wife, who had pending shoplifting charges and a history of making inaccurate reports to law enforcement about her husband—including a 2016 report that resulted in no arrest or charges and a 2017 report that was fully investigated and closed as unfounded. The omissions were made with at least a reckless disregard for whether doing so would

mislead the magistrate. Lowrance offered no plausible justification for excluding the information, the affidavit shows a deceptive pattern of selectively including only the known facts bolstering probable cause, and, at the time of drafting, he was a 20-year veteran law enforcement officer intimately familiar with all the omitted information.

The district court's finding that Lowrance's reckless disregard was not established is clearly erroneous for two reasons: (1) contrary to the weight of evidence, the court found that some information was included by implication and (2) it wrongly believed that *Franks*' reckless disregard required direct evidence that the affiant subjectively knew his actions would mislead the magistrate. But when the full extent of the omitted information is considered under the proper legal standard—that the affiant knew there was a substantial and unjustified risk of misleading the magistrate—the evidence, including circumstantial proof, establishes that Lowrance's omissions were made with at least a reckless disregard for whether doing so would mislead the magistrate.

The omitted information was material. When evidence of April Glass' unreliability is considered, the need for some independent corroboration of her allegation that Glass has child pornography on his cell phone is necessary for probable cause to believe that evidence of a crime would be found in Glass' home. But no such corroboration exists, so a truthful factual showing would not have led a neutral magistrate to issue the search warrant. Accordingly, the fruits of the search should have been suppressed and the district court's order to the contrary reversed.

Alternatively, this Court should vacate two of the receipt convictions and the $5,000 assessment under 18 U.S.C. § 2259A and remand for a resentencing.

Two of the receipt counts are multiplicitous under the Double Jeopardy Clause. The indictment charged Glass with receiving "unparticularized" child pornography at the same location and on the same date in three separate counts. JA15-16. The jury was not instructed to find a unique image to support each count and instead told it "must" return a guilty verdict on all three counts so long as the evidence showed that Glass received some visual depiction involving a minor engaging in sexually explicit conduct, in Iredell County, around February 4, 2020. JA1069-1081. This represents a single offense, not three. The district court's failure to merge them into a single conviction at sentencing is thus reversible plain error.

And the $5,000 special assessment should be vacated because the district court failed to supply an adequate explanation for the penalty, rendering it procedurally unreasonable. Under 18 U.S.C. § 2259A, a sentencing court must consider certain statutorily enumerated factors in determining any assessment amount, which includes the defendant's earning capacity and any ordered restitution award. 18 U.S.C. § 2259A(c). And this Court requires a sentence be accompanied by an on-the-record, individualized explanation. *United States v. Blue*, 877 F.3d 513, 517-21 (4th Cir. 2017). The district court merely offered a one-sentence explanation, which could apply equally to any special assessment, up to the $17,000 maximum. It therefore does not establish an on-the-record individualized assessment of the statutorily-required factors

for the imposed special assessment amount. The assessment should be vacated and remanded for further consideration.

## Argument

I. **The government violated the Fourth Amendment under *Franks v. Delaware* by submitting a warrant application that recklessly omitted material information.**

The Warrant Clause obligates law enforcement to provide the authorizing magistrate sufficient information to "judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause." *Giordenello v. United States*, 357 U.S. 480, 486 (1958). And the Clause "surely takes the affiant's good faith as its premise." *Franks*, 438 U.S. at 164. Accordingly, if a defendant establishes that the warrant affiant knowingly or with reckless disregard for the truth included false statements or misleading omissions in the authorizing affidavit, then "the affidavit's false material [must be] set to one side." *Id.* at 156. For omissions, the omitted information is inserted alongside the affidavit's content and then evaluated for whether probable cause still exists. *See United States v. Lull*, 824 F.3d 109, 117-18 (4th Cir. 2016). If the corrected affidavit "is insufficient to establish probable cause," then the fruits of the search must be suppressed. *Franks*, 438 U.S. at 156.

Here, Lowrance violated his duty of candor to the magistrate judge by omitting from his affidavit information that he knew about April Glass, the informant: that she was an estranged spouse with a history of making unfounded sex-offense allegations against her husband, including in one of the investigations

21

Lowrance cited in his affidavit as supporting probable cause; a history of stealing; and a motive to retaliate against Glass. Once this information is included, the affidavit fails to demonstrate probable cause to search the residence. Police merely had information from an unreliable source with no independent corroboration and only a tenuous link between the contraband and the residence.

## A. Standard of review.

The Fourth Amendment requires suppression of the fruits of a search warrant if a defendant shows by a preponderance of the evidence that: (1) the warrant application's affiant "omitted information with the intent to mislead the magistrate or [ ] he omitted the information with reckless disregard of whether it would make the affidavit misleading," and (2) the omitted information is "material" "under the totality of the circumstances." *Lull*, 824 F.3d at 115, 117-18. When reviewing a district court's ruling on whether the defendant satisfied this test, the Court reviews "factual findings for clear error and legal determinations de novo." *Id.* at 114. The district court's finding that a warrant affiant made a false statement or omission intentionally or with reckless disregard for the truth is a factual finding. *United States v. Pulley*, 987 F.3d 370, 377-78 (4th Cir. 2021). "[A] district court's understanding of the 'reckless disregard' standard is reviewed *de novo*." *United States v. Rajaratnam*, 719 F.3d 139, 153 (2d Cir. 2013). *See also United States v. Lewis*, 18 F.4th 743, 750 (4th Cir. 2021) ("[W]hether the district court applied the correct legal standard" is a "purely legal question" reviewed "de novo."). Further, the materiality of the omitted information reflects "[a] district

court's determination of probable cause[,]" which "is an issue of law...reviewed de novo." *United States v. Wilhelm*, 80 F.3d 116, 118 (4th Cir. 1996).

This Court will reverse a factual finding as being clearly erroneous "if, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *Jiminez v. Mary Washington College*, 57 F.3d 369, 379 (4th Cir. 1995). This Court, "[i]n concluding that the district court has made a mistake, ... tend[s] to focus on four avenues in which the district court may go awry in arriving at its factual findings[.]" *Id.* These avenues are: (1) "the district court labored under an improper view or misconception of the appropriate legal standard;" (2) "the [ ] factual determinations are not supported by substantial evidence;" (3) "the district court disregarded substantial evidence that would militate a conclusion contrary to that reached;" and (4) "the district court's conclusion is contrary to the clear weight of the evidence in light of the entire record." *Id.*

### B. Lowrance's affidavit omitted information with a reckless disregard of whether doing so would mislead the magistrate.

Here, the district court found that Glass did not show Lowrance omitted facts with reckless disregard. In doing so, it erred in two ways: (1) contrary to the clear weight of the evidence, it found that the affidavit implicitly included the information that April Glass was an estranged spouse and that the 2016 investigation resulted in no charges, and (2) it labored under an improper view of the "reckless disregard"

standard. Considering all the information Lowrance excluded from the warrant application under the proper recklessness standard demonstrates that Glass established Lowrance's reckless disregard and the finding to the contrary is clearly erroneous.

### 1. Lowrance omitted that the report Glass had contraband came from his estranged wife with a history of stealing and providing inaccurate information to the police about Glass.

In his affidavit, Lowrance stated that April Glass saw child pornography on Glass' phone and that Glass had been investigated for similar reports in 2012 and 2016. JA322. Lowrance excluded information that: (A) April Glass is the Defendant's estranged spouse, (B) she had a pending larceny charge and was under investigation for a second larceny, and (C) she previously accused Glass of engaging in criminal activity in 2016 and 2017, but no arrest was ever made in the 2016 investigation and the 2017 accusation was fully investigated and determined to be inaccurate and unfounded. The district court agreed this information was omitted from the application except for the martial strife and the absence of an arrest in the 2016 investigation, both of which the court believed were implicitly included in the application. JA480.[2] The clear weight of the evidence, however, does not support the court's included-by-implication theory.

---

[2] At the *Franks* hearing, Detective Lowrance testified that he was unaware that the 2012 case closed with a not guilty verdict or that April Glass had stolen an iPhone in the summer of 2019. JA256, JA296-297, JA299. Glass does not challenge that the affiant was ignorant of this information. As a result, the *Franks* argument does not

According to the district court, the application's statement that "Ms. Glass lived in a different state from the Defendant...convey[ed] to a competent reader that...the Glasses were separated." JA480. The inference itself is suspect as spouses often encounter situations requiring them to live apart for a time—an educational program, an ailing parent, a new job, etc. But even assuming this is a rational inference it nevertheless cannot be drawn here. The affiant never told the Magistrate that April Glass and the Defendant were married, so the premise for inferring marital strife is missing. *See* JA322-323. The affidavit reveals only that the informant and the individual she accused shared the same last name of "Glass." *Id.* The reviewing magistrate had no way of determining whether April Glass was a spouse, parent, sibling, child, cousin, in-law, or even an unrelated person with the same last name. Thus, there is zero evidentiary support for the district court's finding that the application implicitly conveyed the Glasses' marital strife, and as a result the court's finding that the affiant did not omit this information is clearly erroneous. *Compare United States v. Martinez-Melgar*, 591 F.3d 733, 739-40 (4th Cir. 2010) (district court clearly erred in relying on testimony to find the defendant admitted guilt when the testimony did not support such an inference).

Similarly, the district court clearly erred in finding the affiant implicitly conveyed that no charges were ever filed against Glass in the 2016 investigation. The

include this information and is instead limited to the information that Detective Lowrance both had knowledge of and excluded from the application.

application stated that Glass "had been investigated in Virginia for similar reports in 2012 and 2016." JA322. According to the district court, this statement implicitly conveyed that neither charges nor convictions resulted from those investigations. But that finding is contradicted by the record, which demonstrates that charges were brought, and an acquittal resulted, in the 2012 case. JA347. Asserting the mere fact of an investigation may suggest the absence of a conviction, as occurred in the 2012 case, but there is no basis in the record to support that this same assertion also conveys that the investigation did not even generate an arrest, *i.e.,* a reasonable belief that a crime occurred. Asserting the mere fact of an investigation cannot implicitly convey an acquittal in 2012 but no charges at all in 2016. As with its finding regarding the Glasses' marital strife, the district court's finding that the affiant implicitly informed the Magistrate that no charges were brought from the 2016 investigation is thus against the clear weight of the evidence and is clearly erroneous.

The district court clearly erred by failing to consider all the information omitted by the affiant, which included not only Ms. Glass' prior unfounded 2017 allegation and criminal history, but also the facts she was the Defendant's disgruntled, estranged wife, and her 2016 allegation resulted in no charges being brought.

## 2. Circumstantial evidence that Lowrance knew his omissions created a substantial and unjustified risk of misleading the magistrate establishes *Franks'* reckless disregard.

Even aside from the district court's clear error in finding some facts were "implicitly" included in the affidavit, the district court reversibly erred by requiring

Glass to present direct evidence that Lowrance "*subjectively* knew" that the information he excluded would have resulted in the warrant application being rejected. JA479-483. According to the district court, "[a]n inference of intentionality is . . . insufficient" to trigger *Franks'* protection. JA480. Applying that test, following three-plus hours of witness testimony and the introduction of 23 defense exhibits, JA159-304, the district court found that Glass presented "no evidence" of reckless disregard and, as the party with the burden of proof, couldn't "beat" Lowrance's general denials that he did not intend to deceive "with nothing." JA481, JA483.

The district court's understanding of *Franks'* burden on the intentionality standard is flawed in two respects: (1) recklessness requires a person to be aware that his or her conduct poses a risk of a particular result, not know with certainty that their conduct will bring about that result and (2) recklessness can be proven with circumstantial evidence and the rational inferences therefrom.

Recklessness is marked by a person's subjective awareness that their conduct *may* cause harm, i.e., poses a substantial risk. As the Supreme Court recently recognized, "the most common formulation" for a reckless mental state is that "[a] person acts recklessly . . . when he consciously disregards a substantial and unjustifiable risk attached to his conduct, in gross deviation from accepted standards." *Borden v. United States*, 593 U.S. 420, 427 (2021). The person's culpability lies in "pay[ing] insufficient attention" to the risk. *Id.* Leading criminal-law treatises agree that a reckless actor is "conscious of a forbidden harm, he realizes that his conduct

increases the risk of its occurrence, and he has decided to create that risk" but "has not decided or resolved that it shall occur." Jerome Hall, *General Principles of Criminal Law* 115 (2d ed. 1960); *accord* Wayne LaFave, *Substantive Criminal Law* § 5.4(f) (3d ed.) ("'Recklessness' in causing a result exists when one is aware that his conduct *might* cause the [forbidden result], though it is not substantially certain to happen." (emphasis in original)). So, for example, a prisoner claiming a prison official "recklessly disregard[ed]" a substantial risk of harm to the prisoner "need not show that a prison official acted or failed to act *believing that harm actually would befall an inmate*; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 836, 842 (1994) (emphasis added); *see also United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 749-50, 752 (2023) (prohibition on submitting a claim with "reckless disregard" for its truth "captures defendants who are conscious of a substantial and unjustifiable risk that their claims are false").

The district court wrongly believed that it could not rely on inferential reasoning from the Defendant's circumstantial evidence, citing *Colkley*, for the principle that "it is "insufficient" to "infer[]" recklessness. JA479-480. [3] *Colkley* doesn't support that principle. While *Colkley* expressed "doubts" about inferring *Franks*

---

[3] It appears the district court intended to cite to *Colkley*, 899 F.2d at 301. But the order cites "*Id.* at 301" for this proposition, when the preceding cited case, *Miller*, 475 F.3d 621, has no page number 301. JA480.

intentionality from "the fact of omission alone[,]" 899 F.2d at 301, it doesn't hold that courts cannot rely on circumstantial evidence to draw inferences about an affiant's mental state. And this Court's subsequent decisions make clear that defendants *can* prove recklessness with circumstantial evidence in a *Franks* hearing.

In *Lull*, this Court found an affiant omitted information with reckless disregard based only on circumstantial evidence and rational inferences therefrom. 824 F.3d at 115-17. *Lull* acknowledged *Colkley*'s "dicta" but explained that it considered "the fact of omission" "along with the broader circumstances in which the affidavit was drafted." 824 F.3d at 117 n.2; *compare United States v. Clark*, 935 F.3d 558, 565-66 (7th Cir. 2019) (error to infer recklessness from knowledge of omitted adverse information alone); Hall, *General Principles of Criminal Law* at 115-121 (warning against the tendency to confuse the mental state of recklessness with proof of its existence). Relying on circumstantial evidence to infer a particular mental state does not alter the applicable burden of proof in any way. *United States v. Williams*, 405 F.2d 14, 17 (4th Cir. 1968).

Mental state "can rarely be proved by direct evidence"; instead, "it depends on the inferences that can reasonably be drawn from all the evidence." *United States v. Dorman*, 496 F.2d 438, 440 (4th Cir. 1974); *see also Farmer*, 511 U.S. at 842 (criminal recklessness is "subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude" a person had the requisite risk awareness "from the very fact that the risk was obvious); Wayne LaFave, *Substantive Criminal Law* § 5.4(d) (3d ed.) (person's "subjective realization of risk . . . must

generally be inferred from his words and conduct in the light of the circumstances[,]" and if the "conduct is in fact risky, and if the risk is obvious, so that a reasonable man would realize it, we might well infer that he did in fact realize it"). The district court created a standard for proving recklessness that a defendant cannot satisfy absent the law-enforcement officer's confession that he had the requisite intent. This isn't the rule when it comes to establishing a defendant's mental state in criminal cases, and under *Lull* it isn't the rule in a *Franks* hearing, either.

The district court's reliance on this Court's decisions in *Miller v. Prince George's County, MD*, 475 F.3d 621 (4th Cir. 2007), and *United States v. Haas*, 986 F. 3d 467 (4th Cir. 2021), to require Glass to prove that Lowrance "fail[ed] to inform the Judge of facts he *subjectively* knew would negate probable cause," JA480, is similarly misplaced.

In *Miller*, this Court—again, in dicta—commented that "[w]ith respect to omissions, 'reckless disregard' *can* be established by evidence that a police officer failed to inform the judicial officer of facts [he] knew would negate probable cause." 475 F.3d at 627 (emphasis added). The district court's flawed interpretation transformed *Miller*'s observation of one possible evidentiary means to establish recklessness into the *only* standard for measuring recklessness itself.

In *Haas*, the search warrant in a sex-offense case relied on an informant who was a prostitute whom the defendant hired. *Id.* at 472-73. The defendant argued that he should have received a *Franks* hearing because the affiant omitted that the informant was a convicted prostitute and, at one point during the investigation,

provided a fake name during a traffic stop. *Id.* at 472-73, 475. The Court concluded

that the defendant failed to make the required *Franks* preliminary showing of intent

for *two* reasons: First, there was no evidence that the affiant "subjectively knew that

his failure to include [the informant's] criminal history...would mislead the

magistrate." *Id.* at 477. But *additionally*, "nothing about [the informant's] unrelated

criminal history so undermined her credibility that [the Court] otherwise question[ed]

the agent's subjective intent." *Id.* at 477. In other words, as in *Lull*, 824 F.3d at 117

n.2, the Court looked to both the nature of the omitted information and the

surrounding circumstances for an indication that the affiant recklessly excluded the

information.

In sum, the district court applied a legally erroneous standard for determining

recklessness that required Glass to prove that the affiant subjectively knew his

omissions would mislead the magistrate judge, when showing with circumstantial

evidence that the affiant knew there was a substantial and unjustifiable risk that his

omissions would mislead the reviewing magistrate judge is enough. *Lull*, 824 F.3d at

115-17.

### 3. The evidence demonstrated that Lowrance knew there was a substantial risk of misleading the magistrate by excluding the information casting doubt on the reliability of the report that Glass had contraband.

Under the correct recklessness standard, Glass showed that Lowrance exhibited

a reckless disregard for the truth by excluding the substantial information that cast

doubt on April Glass accusation.

This Court, and sister circuits, examine three primary factors in determining whether an affiant acted with reckless disregard in omitting information from a warrant application: (1) whether the affiant testified to a plausible justification for excluding the information, (2) the obviousness of the excluded information's relevancy in determining probable cause, and (3) any other circumstantial evidence indicative of fraudulent intent. *See e.g.*, *Lull*, 824 F.3d at 111-120; *United States v. Perkins*, 850 F.3d 1109, 1116-19 (9th Cir. 2017); *United States v. Gifford*, 727 F.3d 92 (1st Cir. 2013); *United States v. Rajaratnam*, 719 F.3d 139, 154-55 & n.18 (2d Cir. 2013).

For example, in *Lull*, this Court reversed a district court's finding that the affiant did not recklessly omit information, which relied on crediting the affiant's testimony. 824 F.3d at 115-17. There, the affidavit detailed a controlled buy between the defendant and a confidential informant, but the affiant omitted that the informant pocketed $20 leftover from the buy because the affiant believed the theft was not relevant to the controlled buy. *Id.* at 111-13. This Court found the affiant's excuse incredible since the excluded information was clearly relevant, and it was the magistrate's role, not the investigator's, to determine the informant's reliability. *Id.* at 116. This Court concluded that the affiant recklessly disregarded the truth because there was no plausible justification for excluding the information; the import of the excluded information to probable cause was "obvious"; and evidence showed that the theft occurred less than an hour before the affiant drafted the application and led coworkers to immediately fire the informant for no longer being reliable. *Id.* at 115-17.

As in *Lull,* the Ninth Circuit in *Perkins* ordered suppression under *Franks* after concluding that the affiant had no plausible justification for excluding the information from the application, the information was relevant to determining probable cause, and the application indicated a deceptive pattern of selecting only inculpatory information. 850 F.3d at 1116-19. *See also Gifford*, 727 F.3d at 95-101 (finding *Franks* violation where government supplied no plausible justification for excluding information that was obviously critical to determining probable cause).

Here, the record contains all three factors indicating a reckless disregard for the truth. Lowrance offered no plausible justification for his decision to exclude information obviously relevant to April Glass' reliability; he was a veteran officer with intimate knowledge of the excluded information; and his affidavit displayed a deceptive pattern of cherry-picking only inculpatory facts to show the magistrate.

Lowrance's claimed belief that the multiple facts casting doubt on April Glass' reliability were irrelevant to determining probable cause is not credible. He claimed that the 2016 investigation's outcome, April Glass' criminal history, and April Glass' unfounded accusation against Glass in 2017 were not relevant to "[his] evidence" or April Glass' 2019 allegation. JA273, JA240, JA241. This Court's decision in *Lull* puts the lie to Lowrance's assertion. 824 F.3d at 117 (relevancy of the information regarding confidential informant's reliability "should have been obvious to [the affiant]"). As the district court acknowledged, it is "[p]lainly" relevant that April Glass had previously lodged a similar accusation against Glass that was determined,

following a complete investigation, to be unfounded. JA485. The irrelevancy excuse is also belied by the affidavit, which beefed up April Glass' credibility with the corroborative value of a similar investigation in 2016, without revealing that April Glass was also the informant in that investigation and that her allegations were not substantiated. JA322-323; JA229-232; *compare Perkins*, 850 F.3d at 1117 (relying on affidavit to find clear error in district court's finding affiant did not recklessly mislead magistrate).

When probable cause depends on an informant's hearsay as it did here, circumstances casting doubt on the informant's reliability are obviously critical to the probable cause determination. Hearsay may support probable cause "so long as a substantial basis for crediting the hearsay is presented." *Gates*, 462 U.S. at 242. That factual presentation, however, must "be a *truthful* showing." *Franks*, 438 U.S. at 164-65 (emphasis in original). And an affiant does not present a truthful factual showing regarding the reliability of hearsay statements when he excludes facts casting doubt on the declarant's reliability. *See Lull*, 824 F.3d at 116-17 (an affiant displayed a reckless disregard of whether his affidavit would mislead the magistrate by omitting known facts casting doubt on the reliability of an informant (i.e., a hearsay declarant)).

Here, Lowrance omitted most, if not all, of the information casting doubt on the reliability of April Glass' allegations. Lowrance omitted that April Glass was the Defendant's estranged spouse, which provided a motive to fabricate allegations. *See e.g., Zappin v. Cooper*, 2022 WL 985634 (S.D.N.Y. Mar. 31, 2022) (parent in custody

dispute filed false police report accusing presiding judge of assault); *State v. Huebner*, 222 N.E.3d 1186, 1216 (Ohio 2023) (wife instigated false rape accusations to prevail in custody dispute); *Lefebvre v. Lefebvre*, 199 Cal. App. 4th 696, 700-06 (2011) (estranged spouse filed false criminal report to gain advantage in divorce). That April Glass "had some . . . beef with" Glass "is certainly a factor to consider when assessing the reliability of [her] statements." *United States v. Bell*, 585 F.3d 1045, 1050 (7th Cir. 2009). Lowrance also omitted that April Glass had two pending misdemeanor larceny charges, JA296-297, which impaired her reliability. *See United States v. Amaechi*, 991 F.2d 374, 378 (7th Cir. 1993) (although shoplifting not a crime of dishonesty under the Federal Rules of Evidence, "[s]hoplifting, of course, does involve dishonesty of a certain kind"). And, most telling, Lowrance omitted that April Glass had previously lodged similar allegations against Glass, which police investigated but the 2016 allegation was closed without any arrest and the 2017 allegation closed with an affirmative determination that April Glass' accusation was unfounded. Just as "the furnishing of good information in the past contributes to a belief in an informant's credibility, the furnishing of bad information in the past . . . certainly derogate[s]" the informant's credibility. LaFave, *Search & Seizure* § 3.3(b) (6th ed.) (cleaned up). "[T]he omission of so much important information" regarding April Glass' reliability indicates Lowrance omitted the information deliberately or recklessly. *Clark*, 935 F.3d at 559.

Evidence of a deceptive pattern in the affidavit, as occurred in *Perkins*, 850 F.3d at 1116-18, supports a finding that the affiant acted with at least a reckless disregard for whether his presentation would mislead the magistrate. In *Perkins*, the affiant relied on a Canadian investigation, where border patrol found questionable images on the defendant's laptop, to obtain a warrant to search the defendant's home and devices in the United States for child pornography. *Id.* at 1112-14. The affiant told the magistrate that Canadian officials believed the images were child pornography, and he used the images' descriptions from the Canadian file in the affidavit. *Id.* at 1112-14. But he omitted that an expert investigator had concluded the images were not child pornography as well as parts of the images' descriptions that explained certain images had no obvious sexual purpose. *Id.* at 1113-14, 1118. The Ninth Circuit found the affiant's "skewed version of events" revealed "a clear, intentional pattern" of "selectively includ[ing] information bolstering probable cause, while omitting information that did not." *Id.* at 1117-19. This pattern demonstrated at least a reckless disregard for the truth, and this Court determined that the district court clearly erred in concluding otherwise. *Id.* at 1119.

Lowrance's omissions display a similar deceptive pattern. Specifically, Lowrance included that Glass was investigated in 2016 for crimes similar to the current allegations but omitted that no arrests or charges were brought in 2016. He also included that the current allegation came from April Glass but omitted that she was the accused's estranged spouse whose similar allegations in 2016 and 2017 were

determined to be unfounded. While Lowrance listed the 2016 investigation (but not its results), he didn't mention the 2017 investigation at all, even though it was more recent, had prompted a full investigation involving Lowrance himself performing a forensic search that found no contraband, and was ultimately closed with a determination that April Glass had provided inaccurate information. Lowrance's omissions, as in *Perkins*, show his purposeful presentation of a skewed version of events by selectively including only information bolstering probable cause, while omitting information undercutting it. In doing so, Lowrance displayed at least a reckless disregard for whether his omissions would mislead the magistrate.

Additionally, Lowrance's experience and intimate familiarity with the omitted information offer additional circumstantial proof that he acted at least recklessly when omitting obviously significant information that undermined any reasonable belief that Glass possessed contraband.

 Lowrance was a Detective Sergeant with 20 years of law enforcement experience, including a decade of service as an FBI Cyber Task Force member. JA219, JA321. He had logged over 1,616 hours of continuing education and held an Advanced Certificate from the NC Criminal Justice Training and Standards Division. JA321. Indeed, less experienced officers turned to Lowrance for help in drafting search-warrant applications. JA211, JA283.  Lowrance's experience demonstrates that he knows probable cause is based on the totality of the circumstances and that an affiant must supply "[s]ufficient information...to the magistrate[,]" including

information about the credibility of hearsay necessary to support probable cause, *Gates*, 462 U.S. at 238-42. Given Lowrance's experience and training, the necessity of including any circumstances that undercut the reliability of April Glass' allegation "should have been obvious to [Lowrance]." *Lull*, 824 F.3d at 116-18 & n.2 (finding recklessness based, in part, on affiant's "experience[,]" as a "broader circumstance" that ensured he had knowledge of the factors important in the probable cause analysis as well as the relevancy of the excluded information).

Further, the omissions concerned information that Lowrance was intimately familiar with because of his involvement in this and prior investigations. In *Lull*, this Court relied on the "temporal proximity" between the informant's arrest, which was omitted from the affidavit, and the affidavit's drafting, which happened less than 30 minutes later, as a "significant" fact showing the affiant's recklessness. *Lull*, 824 F.3d at 112-13, 116-17. Here, shortly before he drafted the affidavit, Lowrance spoke with Officer Lamberth about the investigation into April Glass' similar allegation in 2017. *Compare* JA266 (discussion occurred in 2020) *with* JA320 (affidavit sworn on February 10, 2020). Moreover, in 2017 Lowrance himself conducted the forensic search of Glass' device, which revealed no contraband images. JA266-267, JA282, JA284, JA286. Additionally, about two weeks before Lowrance prepared the affidavit, he received a call from another law enforcement officer who reported arresting April Glass for larceny. JA395-396. And less than a week before submitting his affidavit, he received an email from April Glass cataloging various grievances against Glass,

including that she had just "cussed" him out, asked for a police escort to his residence because her father-in-law had kicked her out, claimed that local officers had told her she was in danger, and asserted that she "plan[ned] to go after alimony" because Glass "caus[ed] [her] to lose [her] kids." JA413. Rather than revealing any of these circumstances to the reviewing magistrate, Lowrance simply identified April Glass by her name without saying more.

In sum, Lowrance omitted that April Glass was Glass' estranged wife, who had pending shoplifting charges and a history of making inaccurate reports to law enforcement about her husband--including a 2016 report that resulted in no arrest or charges and a 2017 report that was fully investigated and closed as unfounded. Glass demonstrated that Lowrance had no plausible justification for these omissions, the omitted information was clearly significant to determining probable cause, the affidavit revealed a deceptive pattern of selectively including the known facts bolstering probable cause, while omitting those that did not, and, at the time of drafting, Lowrance was a 20-year veteran law enforcement officer intimately familiar with all the omitted information. Together, these facts demonstrated that Lowrance's omissions were made with at least a reckless disregard for whether doing so would mislead the magistrate. The district court's conclusion to the contrary is clearly erroneous. *See Lull*, 824 F.3d at 115-17 (reversing district court's finding that the defendant did not show the affiant was reckless by a preponderance of the evidence); *Perkins*, 850 F.3d at 1116-19 (same).

**C. The omissions were material because an unreliable source's uncorroborated allegation that Glass' cell phone contains contraband does not supply probable cause to search Glass' home.**

The second prong of a *Franks* violation requires Glass to show by a preponderance of the evidence that the recklessly omitted information was material. *Lull*, 824 F.3d at 115. Omissions are material if the affidavit "is insufficient to establish probable cause" when the excluded information is inserted into the affidavit. *Franks*, 438 U.S. at 155-56. When deciding materiality, this Court determines whether the truthful affidavit, given the totality of the circumstances, amounts to probable cause. *Lull*, 824 F.3d at 117-20.

"[P]robable cause to search [ ] exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 US 690, 696 (1996). Probable cause may arise from hearsay "so long as a substantial basis for crediting" the information exists. *Gates*, 462 U.S. at 241-42. When considering hearsay, "an informant's veracity, reliability, and basis of knowledge are all highly relevant"; independent police corroboration may compensate for a deficiency in the hearsay-declarant's credibility. *Id.* at 230, 244-46. "The critical element" for probable cause to search "is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought[,]" not that the property's owner is suspected of a crime. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

When Lowrance's recklessly excluded information is considered, the application's probable-cause showing comes up short because the affidavit supplies only an uncorroborated allegation from an unreliable source with a tenuous link between the residence and the alleged child-pornography activity.

Here, the report that Jessie Glass possessed child pornography did not come from an "unquestionably honest citizen," whose mere report required little, if any, corroboration to generate a reasonable belief that Glass' residence would in fact have evidence of that crime. *Gates*, 462 U.S. at 234. Instead, the report that Glass had contraband came from his estranged spouse, who had recent run-ins with law enforcement and on multiple occasions had previously provided police with inaccurate information accusing Glass of criminal activity. A reasonably prudent person would not believe that contraband would likely be found in Glass' home based solely on allegations made by his estranged wife with an unreliable track record. Rather, a reasonably prudent person would realize that corroboration was required to credit the allegation.

Precedent backs up the common-sense conclusion that April Glass' questionable credibility required officers to corroborate her allegations before a magistrate could accept them as establishing probable cause to intrude upon the home's sanctity. For example, in *State v. Olson*, 314 Mont. 402 (2003), the Montana Supreme Court found that an estranged husband's report that he saw a methamphetamine lab in his wife's garage supplied probable cause for a search

warrant, where police corroborated his report by observing individuals hurriedly relocating objects from the garage mere hours after the husband's observation. *Id.* at 404, 408-10. Similarly, this Court found a magistrate had a substantial basis to credit an estranged partner's report that the defendant possessed a sawed-off shotgun, where police corroborated the report with a photograph of her holding the gun. *United States v. Hodges*, 705 F.2d 106, 107-09 (4th Cir. 1983). *See also State v. Cowdin*, 25 Kan.App.2d 176, 177-81 (1998) (officers' partial corroboration of wife's report rendered the affiant's omission of facts casting doubt on her reliability immaterial).

But rather than obtaining evidence to corroborate April Glass' allegations, Lowrance instead misrepresented April Glass as someone whom the magistrate could believe absent corroboration. A truthful factual presentation to the magistrate—that April Glass's report was of dubious reliability and no independent corroboration was obtained—would have led the magistrate to deny the search warrant. *See generally United States v. Helton*, 35 F.4th 511, 520 (6th Cir. 2022) ("[O]ne of the dangers of law enforcement's failure to corroborate all that can be easily corroborated is that a warrant will not issue where it should").

The affidavit's deficient probable cause showing is more apparent when examining the tenuous connection between the property to be searched (the residence) and April Glass' uncorroborated allegation that Glass' cell phone contained contraband. A residential search warrant may only issue upon "some information

link[ing] the criminal activity to the [that] residence." *United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993).

Two circuits have held that connecting a residential occupant's cell phone with criminal activity does not, for probable cause purposes, link the residence itself to criminal activity. *United States v. Mora*, 989 F.3d 794, 800-03 (10th Cir. 2021); *United States v. Griffith*, 867 F.3d 1265, 1272-78 (D.C. Cir. 2017). The D.C. Circuit found that a warrant to seize all electronic devices from the home of the suspected getaway driver in a homicide was facially overbroad. *Griffith*, 867 F.3d at 1272-78. The breadth of property subject to seizure under the warrant "far outstripped" the police's probable cause showing; even assuming justification to seize the suspect's cell phone, police still needed a reason to believe "that the device would be located in the home" and, even then, searching and seizing "*all* electronic devices" in the home was not justified. *Id.* at 1273, 1276. Similarly, the Tenth Circuit rejected that probable cause supported a warrant to search a home for a cell phone, when there was only "bare speculation that Defendant may have kept a cell phone in his home." *Mora*, 989 F.3d at 802.

Here, the affidavit relied on April Glass' report that Glass was using his cell phone to engage in criminal activity. JA322. But, as the *Griffith* and *Mora* courts recognized, probable cause to search a residence for all electronic devices requires more than a belief that a suspect's cell phone has evidence of a crime. After all, "[p]eople ordinarily carry their cell phones with them wherever they go[,]" *Griffith*, 867

43

F.3d at 1273, and that was precisely the case here. Police did not find the Samsung cell phone cited in April Glass' report in the residence, they found it on his person, at his workplace. JA780-783.

Rather than investigate to find corroboration for April Glass' allegation, Lowrance submitted a misleading affidavit to search Glass' residence to engage in a fishing expedition for that corroboration. A truthful presentation that police merely had an uncorroborated accusation, from an unreliable source, that Glass had contraband on his cell phone would not lead a reasonably prudent person to believe that all electronic devices at Glass' residence would have evidence of a crime. Because the affidavit disclosing a truthful showing "is insufficient to establish probable cause, the search warrant must be voided[.]" *Franks*, 438 U.S. at 156.

*     *     *

Lowrance presented the magistrate with a misleading representation that April Glass was an unquestionably honest citizen merely reporting a child pornography crime by excluding that she was actually the accused's estranged spouse with a history of deception that included a prior unfounded accusation against her husband. The omissions were material because, when evidence of her unreliability is considered, there can be no probable cause without corroboration of April Glass' allegations. And that corroboration did not exist. The district court's denial of Glass' suppression motion under *Franks* should be reversed, and his conviction and sentence vacated.

## II. Two of the receipt convictions should be vacated under the Double Jeopardy Clause.

The government charged and obtained convictions on three separate counts for receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1). All three counts charged Glass generally with receiving "any child pornography" "in Iredell County" on or about the same time period. JA15-16. Specifically, the date for Count 1 was "[o]n or about February 4, 2020," Count 2's date was "[b]etween on or about January 8, 2020 and February 4, 2020," and Count 3's was "[b]etween on or about January 8, 2020, and on or about February 5, 2020." *Id.* But these counts represent only a single offense, so the district court's entry of three separate convictions runs afoul of the Double Jeopardy Clause.

### A. Standard of review.

Because Glass did not make a multiplicity objection in the district court, this Court reviews for plain error. "[U]nder plain-error review, a defendant must show that: (1) an error occurred; (2) the error was plain; and (3) the error affected his substantial rights." *United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020) (en banc). If a defendant satisfies these three requirements, this Court will correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

**B. The convictions are multiplicitous because all three counts charged receiving unparticularized child pornography on the same date and the jury was not instructed to find a unique image for each count.**

The Fifth Amendment's Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This protects "against the imposition of cumulative punishments for the same offense in a single criminal trial[.]" *United States v. Slocum*, 106 F.4th 308, 312 (4th Cir. 2024) (emphasis and quotations omitted). This protection "attaches if the subject offenses are in law and in fact the same offense." *Id.* at 314. Here, the district court erred by not merging the three receipt convictions into a single offense at sentencing because the three are in law and fact the same offense.

As all three counts charge the same statutory violation, they are "in law" the same offense. *See United States v. Schnittker*, 807 F.3d 77, 81-82 (4th Cir. 2015) (subject offenses sharing the same elements are the same in law). The receipt counts are also "in fact" the same. This Court has found that two child pornography counts are not the same "in fact" if they are based on distinct images. *Schnittker*, 807 F.3d at 82-83; *accord United States v. Benoit*, 713 F.3d 1, 14-18 (10th Cir. 2013) (convictions for both receiving and possessing the same image were multiplicitous in violation of the Double Jeopardy Clause). But here, the receipt counts do not rest on distinct images and instead rest on Glass receiving some unidentified visual depiction involving sexually explicit conduct, in Iredell County, around February 4, 2020.

46

The record does not demonstrate that the three receipt counts are each based on a different image; rather, overwhelming evidence indicates otherwise. Through the indictment, the government consciously elected to charge Glass with generally receiving "any child pornography," in three different counts, at the same location and in the same time period. JA15-16. It did so even though it can and does charge specific image(s) to support multiple receipt counts. *E.g.*, *United States v. Derrick Alexander Swick*, Case No. 5:22-CR-103 (E.D. N.C.), Indictment, Dkt. #1 at 1 (charging five counts of receipt, each of which was supported by a different offense date and distinct file name). And the district court's jury instructions likewise did not instruct the jury each count of receipt must be supported by a separate image. JA1071-1073. In fact, the court affirmatively instructed the jury to convict on each count of the three receipt counts even if it only found that Glass received a single image, by telling the jury that Glass was guilty on each receipt count if the evidence showed Glass knowingly and intelligently received "any visual depiction…of sexually explicit conduct" "on a date reasonably near the date or dates alleged" in the receipt count. JA1071-1073, JA1081.

Although the government did indicate that a particular image underlay each count, JA1039-1041, this does not suffice to ensure that Glass' three receipt convictions each represent a separate offense. The government's first and only identification of a particular image to support each count came in its closing argument. JA1039-1041. But the jury was admonished that "it is [their] sworn duty to

47

follow the law as the Court [ ] instruct[ed,]" that closing arguments are not evidence, and any difference between what an attorney and the court says is the law, must be decided in favor of the court's instruction. JA1027, JA1033. Moreover, the government's closing argument was also murky as to the distinctions between the receipt counts, with the prosecutor referring to the receipt crime in the singular. *See* JA1043 (explaining that exhibits 28, 31, 37, and 41 were for "the possession count, not the receipt count"). On this record, a single isolated remark in closing argument is insufficient to overcome the indictment and jury instructions conveying that each count rested on the same conduct.

In *Benoit*, the Tenth Circuit found convictions for receiving and possessing child pornography multiplicitous notwithstanding the government's argument that its summary chart supported finding each count rested on a distinct image. 713 F.3d at 15-18. Rather, because the indictment used "identical language in both counts[,]" prosecutors referred to the counts as based on the same images, and the jury was not instructed that the counts referred to distinct images, one of the convictions had to be reversed. *Id.* These same considerations are present in Glass' case, where the indictment and instructions all dictated that Glass receiving "any" visual depiction involving sexually explicit conduct in Iredell County around February 4, 2020, supported convictions on all three counts, and the proof did not assure that the jury would require otherwise.

The error is plain. Under Supreme Court precedent, a district court errs by entering two convictions for conduct that amounts only to a single offense. *Ball v. United States*, 470 U.S. 856, 865 (1985). And this Court has held that the government avoids double-jeopardy issues in a child-pornography case when each count is based on a different visual depiction. *Schnittker*, 807 F.3d at 82-83.

The error also satisfies the third and fourth prongs of plain-error review, because Glass is, at a minimum, entitled to the vacatur of the multiplicitous convictions' additional special assessments, and, under the sentencing package doctrine, the reduced number of convictions may alter the sentencing calculus. *See United States v. Ajayi*, 808 F.3d 1113, 1124 (7th Cir. 2015) (sentencing package doctrine and vacatur of special assessment satisfied plain error's standard for correcting a multiplicitous punishment).

Whether or not "the government *intended* to charge [Glass] for two distinct acts," *Benoit*, 713 F.3d at 17 (emphasis in original), it didn't do so, nor did the jury find beyond a reasonable doubt that he committed three distinct child-pornography receipt offenses. As a result, this Court should remand with instructions to vacate two of the receipt convictions and hold a resentencing. *See United States v. Smith*, 54 F.4th 755, 775 (4th Cir. 2022) (vacating judgment with multiplicitous count and remanding for a resentencing).

### III. The $5,000 assessment under 18 U.S.C. § 2259A is erroneous.

Under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Glass was subject to a special assessment of up to $17,000. 18 U.S.C. § 2259A(a)(1). The district court sentenced Glass to pay a $5,000 assessment under this statute. But, in doing so, failed to comply with the statutory directive requiring courts to consider certain factors when deciding the amount for any § 2259A assessment.

### A. Standard of review.

Because Glass objected to an assessment under 18 U.S.C. § 2259A, JA1374, this Court reviews the district court's $5,000 assessment under this statute for an abuse of discretion. *See United States v. Provance*, 944 F.3d 213, 217 (4th Cir. 2019) ("We review a district court's sentence for an abuse of discretion.").

### B. There is no on-the-record explanation of the statutorily-required factors for determining the assessment amount.

The district court abused its discretion by imposing a $5,000 assessment under 18 U.S.C. § 2259A without any on-the-record consideration of how the statutorily required considerations factored into its amount determination.

This Court requires district courts "to explain their sentencing reasoning on the record." *Blue*, 877 F.3d at 521. And as to this monetary aspect of the sentence, the district court "shall consider[,]" "[i]n determining the amount of the assessment[,] … the factors set forth in sections 3553(a) and 3572." 18 U.S.C. § 2259A(c). Among

those factors are the defendant's history and characteristics, the need to provide restitution to any victims of the offense, whether any additional monetary penalty will impair the defendant's ability to make restitution, and the defendant's earning capacity and financial resources. 18 U.S.C. § 3553(a)(1), (7); 18 U.S.C. § 3572(a)-(b).

The district court's only on-the-record statement was: "[H]e could and should be able to pay some assessment with respect to Section 2259A and would set that special assessment at $5,000 to be paid in $50 installments to begin 60 days after release from imprisonment." JA1310. This solitary sentence does not comply with the court's duty to provide an on-the-record explanation for how it considered the relevant statutory factors in arriving at a $5,000 amount. It "could apply to *any*" assessment. *United States v. Carter*, 564 F.3d 325, 328-29 (4th Cir. 2009) (emphasis in original) (vacating sentence where district court failed to provide an adequate basis for appellate review).

Further, the context of the sentencing offers no additional insight about how the district court arrived at its $5,000 amount. Glass was indigent with significant health issues, which included diabetes requiring amputation, and he will be 65 years old when released from his 15-year sentence. JA1259, JA1309-1310. He was already subject to a $6,000 restitution order. JA1309-1310. The Presentence Report recommended no particular amount for a § 2259A assessment. *See* JA83. And the government only sought a "a minimal, not zero" amount. JA1301. This Court will not "speculate" on how a district court arrived at its sentence, *Blue*, 877 F.3d at 521, and

assessing the $5,000 assessment on this record necessarily requires speculation. *See United States v. Peggs*, 2023 WL 55004 at *1-2 (4th Cir. 2023) (because "a § 3014(a) special assessment cannot stand where the district court failed to conduct an individualized evaluation of [defendant's] ability to pay"[,]" such an assessment imposed without that individualized consideration had to be vacated). Accordingly, the Court should vacate the $5,000 assessment and remand with instructions to reconsider the amount in accordance with 18 U.S.C. 2259A(c). *See United States v. Clemons*, 2023 WL 3018426 (4th Cir. 2023) (per curiam) (error for district court to not consider or make any findings about the defendant's restitution obligation before imposing an assessment under 18 U.S.C. § 2259A).

## Conclusion

For the foregoing reasons, the Court should vacate Glass' convictions and sentence and remand the case to the district court.

## Request for Oral Argument

Glass respectfully requests oral argument, because this case presents a significant Fourth Amendment violation.

Date: October 18, 2024

Respectfully submitted,

John G. Baker,
Federal Public Defender for the
Western District of North Carolina

/s/Melissa S. Baldwin
Melissa S. Baldwin
Assistant Federal Public Defender
One Page Avenue, Suite 210
Asheville, NC 28801
(828) 232-9992
Melissa_Baldwin@fd.org
*Counsel for Appellant*

# <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*12,759*] words.

    [    ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.    This brief complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Garamond*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated:  October 18, 2024                                  /s/ Melissa S. Baldwin
                                                                        *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 18th day of October, 2024, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Amy Elizabeth Ray
> Assistant U.S. Attorney
> OFFICE OF THE UNITED STATES ATTORNEY
> United States Courthouse
> 100 Otis Street, Room 233
> Asheville, NC 28801
> (828) 271-4661
>
> *Counsel for Appellee*

I further certify that on this 18th day of October, 2024, I caused a copy of the Sealed and Media Volumes of the Joint Appendix to be served (on CD-ROM), via FedEx, upon counsel for the Appellee, at the above address.

/s/ Melissa S. Baldwin

*Counsel for Appellant*
