IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————————

No. 24-4193

———————————————

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

JESSIE LEROY GLASS, JR.,

*Defendant - Appellant.*

———————————————

Appeal from the United States District Court
for the Western District of North Carolina

*The Honorable Kenneth D. Bell, District Judge*

———————————————

REDACTED BRIEF OF THE UNITED STATES

———————————————

Dena J. King
United States Attorney

Amy E. Ray
Assistant United States Attorney
United States Courthouse
100 Otis Street, Room 233
Asheville, North Carolina 28801
(828) 271-4661

*Attorneys for the United States of America*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................iv

JURISDICTIONAL STATEMENT .......................................................1

ISSUES PRESENTED ..............................................................................1

STATEMENT OF THE CASE .................................................................2

    A.    Glass receives and possesses hundreds of images of
          child pornography ...................................................................2

          1.    Police first investigate Glass in 2012 after
                    that he .........................3

          2.    Police investigate Glass in 2016 after his wife sends
               her mom images of child pornography found on
               Glass's cell phone .........................................................4

          3.    Police investigate Glass again in 2017 when his
               wife reports that he has child pornography on his
               computer.........................................................................6

          4.    Glass's wife reports finding child pornography on
                Glass's cell phone in late 2019, and police find
                hundreds of videos and images depicting child
               pornography ..................................................................9

    B.    Glass is charged with federal child-pornography
          offenses ..................................................................................14

    C.    The district court denies Glass's motion to suppress after
          a *Franks* hearing ................................................................15

i

D.     A jury finds Glass guilty of four child-pornography offenses, and the district court sentences Glass to 180 months in prison ................................................................. 23

SUMMARY OF THE ARGUMENT ....................................................... 27

ARGUMENT

I.     The district court properly denied Glass's motion to suppress ..... 30

       A.     Standard of Review ............................................................. 30

       B.     Discussion ............................................................................ 30

              1.     The *Franks* Standard ................................................... 31

              2.     The district court did not clearly err when it found that Lowrance did not omit information with an intent to mislead or in reckless disregard of whether it would mislead ............................................ 33

              3.     The district court properly found that any omissions were not material to the probable-cause determination ............................................................. 46

II.    The district court properly entered judgment against Glass on all three receipt offenses because each offense is distinct ....... 51

       A.     Standard of Review ............................................................. 51

       B.     Discussion ............................................................................ 52

III.   The district court's imposition of a $5,000 assessment was procedurally reasonable ................................................................. 59

    A.     Standard of Review ................................................................ 59

    B.     Discussion ............................................................................... 59

CONCLUSION ..................................................................................... 63

REQUEST FOR DECISION ON THE BRIEFS WITHOUT
           ORAL ARGUMENT ............................................................ 64

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Chavez-Meza v. United States,*
  138 S. Ct. 1959 (2018) .......................................................... 60

*District of Columbia v. Wesby,*
  583 U.S. 48 (2018) ................................................................ 46

*Franks v. Delaware,*
  438 U.S. 154 (1978) ........................................ 16, 31, 32, 44

*Gall v. United States,*
  552 U.S. 38 (2007) ............................................................... 59

*Illinois v. Gates,*
  462 U.S. 213 (1983) ............................................................. 47

*Miller v. Prince George's County, Maryland,*
  475 F.3d 621 (4th Cir. 2007) ....................................... 42, 44

*States v. Ross,*
  912 F.3d 740 (4th Cir. 2019) ............................................. 59

*United States v. Allen,*
  631 F.3d 164 (4th Cir. 2011) ........................................ 31, 32

*United States v. Benoit,*
  713 F.3d 1 (10th Cir. 2013) ............................... 53, 54, 56, 57

*United States v. Bullis,*
  122 F.4th 107 (4th Cir. 2024) ............................................ 51

*United States v. Colkley*,
  899 F.2d 297 (4th Cir. 1990) ............................................................ 32

*United States v. Darosa*,
  102 F.4th 228 (4th Cir. 2024) .......................................................... 47

*United States v. Davis*,
  855 F.3d 587 (4th Cir. 2017) ............................................................ 57

*United States v. Dunson*,
  142 F.3d 1213 (10th Cir. 1998) ........................................................ 50

*United States v. Lull*,
  824 F.3d 109 (4th Cir. 2016) ...................................................... 31, 44

*United States v. Marcus*,
  560 U.S. 258 (2010) ......................................................................... 52

*United States v. Moody*,
  931 F.3d 366 (4th Cir. 2019) ............................................................ 32

*United States v. Norman*,
  935 F.3d 232 (4th Cir. 2019) ............................................................ 30

*United States v. Olano*,
  507 U.S. 725 (1993) ......................................................................... 52

*United States v. Ortiz*,
  669 F.3d 439 (4th Cir. 2012) ............................................................ 47

*United States v. Pulley*,
  987 F.3d 370 (4th Cir. 2021) ................................................... passim

*United States v. Ragins*,
  840 F.2d 1184 (4th Cir. 1988) ......................................................... 53

*United States v. Schnittker*,
807 F.3d 77 (4th Cir. 2015) ....................................... 51, 52, 53

*United States v. Slocum*,
106 F.4th 308 (4th Cir. 2024) ....................................... 53

*United States v. Tate*,
524 F.3d 449 (4th Cir. 2008) ............................................. 32

*United States v. Walker*,
922 F.3d 239 (4th Cir. 2019) ............................................ 59

*United States v. Wharton*,
840 F.3d 163 (4th Cir. 2016) ............................................ 30

## **Statutes**

18 U.S.C. § 2252A(a)(2) .................................................. 14

18 U.S.C. § 2252A(a)(5)(B) .............................................. 14

18 U.S.C. § 2252A(b)(2) .................................................. 14

18 U.S.C. § 2259A .......................................... 25, 29, 59, 61

18 U.S.C. § 2259A(a) ........................................................ 2

18 U.S.C. § 2259A(a)(2) ................................................... 60

18 U.S.C. § 2259A(c) ....................................................... 60

18 U.S.C. § 3014 ............................................. 25, 26, 61

18 U.S.C. § 3014(a) ......................................................... 61

18 U.S.C. § 3231 .............................................................. 1

18 U.S.C. § 3553(a).................................................................29, 59, 60

18 U.S.C. § 3572 .........................................................................29, 60

28 U.S.C. § 1291 ...................................................................................1

**<u>Rules</u>**

Fed. R. Crim. P. 12(b)(3)(B)(ii) ................................................................53

## JURISDICTIONAL STATEMENT

Jessie Leroy Glass, Jr., appeals his convictions after a jury found him guilty of child-pornography offenses. The district court's subject-matter jurisdiction derives from 18 U.S.C. § 3231. The district court entered its judgment on April 1, 2024, J.A. 1314; the same day, Glass filed a timely notice of appeal, J.A. 1323. This Court's appellate jurisdiction is premised on 28 U.S.C. § 1291.

## ISSUES PRESENTED

I.      The police officer who authored the search-warrant affidavits for Glass's home and cell phone testified during a *Franks* hearing that he did not omit any information relevant to probable cause from the affidavits, and the district court credited his testimony. Probable cause would have supported the issuance of the search warrant with or without the information Glass challenges. Did the district court properly deny Glass's motion to suppress?

II.     A grand jury charged Glass with three counts of receiving child pornography. Each count charged that Glass committed the offense on a different date or date range. The United States presented

evidence that Glass received child pornography at three different times within a 48-hour period.    Did the district court commit plain error affecting Glass's substantial rights when it sentenced and entered judgment against Glass on all three convictions?

III.    A recent statute, 18 U.S.C. § 2259A(a), requires a special assessment that takes into account a defendant's resources but also reflects the seriousness of child-exploitation offenses.    The district court imposed $5,000 in assessments, a fraction of the maximum authorized and consistent with Glass's indigency, earning capacity, and the § 3553(a) sentencing considerations.    Did the district court abuse its discretion?

## STATEMENT OF THE CASE

### A.    Glass receives and possesses hundreds of images of child pornography.

Between 2012 and 2020, police investigated Glass four times for engaging in child sex offenses or child-pornography offenses.    In February of 2020, police found Glass in possession of hundreds of images and videos depicting the sexual abuse of children, including infants.

1.  *Police first investigate Glass in 2012 after* ███████ ████████████████ *that he* ████████▐████████.

In March of 2012, Glass's wife at the time, Jennifer Glass, brought a desktop computer she shared with Glass to a sheriff's department in Virginia and reported that on multiple occasions she had seen Glass view what she believed were images of child pornography.   J.A. 315. Jennifer described the images as depicting children between 9 and 12 years old engaged in sexual acts, some involving adults.   J.A. 315. When Jennifer confronted Glass, he told her he had "accidentally received them in an email" and "would delete them."   J.A. 315. Jennifer also reported that ████████████████████▐ ██████████████████████████▐ ████████████████████████████▐ ████████████   J.A. 300–301, J.A. 315–316.   The police obtained a search warrant, authorizing the search of Glass's home.   J.A. 315. During the search, they found internet connections and a laptop power cord but no laptop.   J.A. 315.   Glass told the officers different stories about the laptop, asserting that he had gotten rid of it the day before,

3

that it had been gone for two months, and that it had been hit by lightning three to four weeks earlier.   J.A. 315.   A month later, Jennifer found two compact discs of Glass's that contained "numerous photos of child pornography."   J.A. 315.

Glass was charged in a circuit court in Wythe County, Virginia, with two counts of felony sodomy on a minor under 13 years old.   J.A. 100, J.A. 227, J.A. 316.   Both charges were eventually dismissed.   J.A. 268–269, J.A. 361.

> 2.   *Police investigate Glass in 2016 after his wife sends her mom images of child pornography found on Glass's cell phone.*

In 2016, Glass's second wife, April Glass, who was living with Glass in Statesville, North Carolina, sent her mother, Sandra Cox, five images that she had found on Glass's phone.   J.A. 160–161, J.A. 306. The five images depicted prepubescent children.   J.A. 162.   Two of the photographs depicted children who were clothed but were bound and gagged.   J.A. 162.   Three of the photographs depicted nude children who were bound or engaged in sexual acts with an adult or other children.   J.A. 162.

4

Cox took her phone with the images to the Wytheville, Virginia, police department near her home. J.A. 160–161. The police department contacted Sergeant Heather Brown with the Virginia State Police, and Brown interviewed Cox. J.A. 161–163. Cox told Brown that she was concerned about her daughter's safety and that April did not want Cox to report that April had sent her the photos. J.A. 163, J.A. 306.

Brown interviewed April a couple of days later when April returned to Virginia for a doctor's appointment. J.A. 164–165. April told Brown that she became suspicious that Glass was having an affair and discovered the photographs when looking through his phone. J.A. 165, J.A. 184. She also told Brown that Glass had discovered her text messages with Cox. J.A. 164–166, J.A. 307. April had told Glass that someone related to a website he had visited had reported his activity to the police. J.A. 164–166, J.A. 307. Glass, reported April, had "taken his phone somewhere and gotten rid of it." J.A. 164–165. And he told April to report that Glass had lost his phone. J.A. 166, J.A. 307.

Brown later interviewed Glass.   J.A. 167.   Glass admitted during the interview that he had seen some photos of children engaged in sex acts "once or twice."   J.A. 168–169, J.A. 309–311.   But he claimed that he had accidentally downloaded the images while looking for adult pornography.   J.A. 168–169, J.A. 309–311.   Glass stated that "if he came across" child pornography, he "would immediately get rid of" the photos.   J.A. 169, J.A. 309.   Glass told Brown that he had had his phone earlier that day but had lost it.   J.A. 171.

Brown held the case open for more than a year, hoping the Iredell County Sheriff's Office or North Carolina's State Bureau of Investigation would prosecute the case.   J.A. 90–92, J.A. 175, J.A. 191, J.A. 193–194.   But Brown did not find anyone interested in pursuing prosecution or further investigation.   J.A. 90–92, J.A. 175, J.A. 191, J.A. 193–194.   She eventually closed the file, because no crimes occurred in Virginia.   J.A. 90–92, J.A. 175.

3.   *Police investigate Glass again in 2017 when his wife reports that he has child pornography on his computer.*

In May of 2017, April reported to the Iredell County Sheriff's Office's tip line that there were marijuana and tablets "full of child

6

porn" at Glass's home.   J.A. 96, J.A. 200–201, J.A. 314.   Detective

Chris Lamberth went to Glass's home to speak with him about the

allegations.   J.A. 96, J.A. 202, J.A. 403.   Lamberth met Glass in the

driveway, explained that the sheriff had received a tip that he had a

tablet containing child pornography, and asked if there were any tablets

in the house.   J.A. 96, J.A. 202–203, J.A. 403.   Glass responded that

there was a tablet.   J.A. 96, J.A. 203, J.A. 403.   Lamberth asked Glass

if he could search the tablet for any possible child pornography.   J.A.

96, J.A. 203, J.A. 403.   Glass went inside, got the tablet, and agreed

that investigators could search it for child pornography.   J.A. 96, J.A.

203, J.A. 403.   Glass also allowed Lamberth and two others to search

his home for other computers and narcotics, but they found neither.

J.A. 403.

Lamberth reviewed the internet history on the tablet and noticed

that Glass had visited "numerous" pornography websites and had

searched for content including "young dominatrix."   J.A. 96, J.A. 203.

Lamberth asked Glass if there was any child pornography on the tablet.

J.A. 204.   Glass told Lamberth that "there should not be any underage

pornography" on the tablet and that "if any had ever popped up on the screen," Glass "did not dwell on it." J.A. 96, J.A. 204. Glass's comment "threw up a red flag" for Lamberth, so he asked Glass if there was anything on the tablet that Glass wanted to tell him about. J.A. 96. With "tears welling up in his eyes," Glass told Lamberth that there was not anything he wanted to tell Lamberth. J.A. 96. When Lamberth was in Glass's bedroom he noticed both children's toys and sex toys. J.A. 96.

Lamberth obtained a search warrant authorizing the sheriff's office to search the tablet. J.A. 93–95, J.A. 204, J.A. 355–356. Detective Jason Lowrance, an experienced child-sex-crimes investigator, assisted Lamberth with the search. J.A. 204, J.A. 212, J.A. 281–282. Lamberth did not find any child pornography on the tablet. J.A. 93, J.A. 205, J.A. 404. Consequently, Lamberth returned the tablet to Glass and "clos[ed] the case as unfounded." J.A. 93, J.A. 205–206.

4. *Glass's wife reports finding child pornography on Glass's cell phone in late 2019, and police find hundreds of videos and images depicting child pornography.*

In late December of 2019, April submitted a report on the website for the Iredell County, North Carolina, sheriff's office, alleging that she had recently seen child pornography on her husband's cell phone. J.A. 69, J.A. 219–220, J.A. 247–248, J.A. 409–410, J.A. 737–738, J.A. 768–769. April provided Glass's Google account email address and a likely password for that account. J.A. 69. April also wrote that she had "left around the end of December." J.A. 69.

A few weeks later, Lowrance reached April, who was living in Virginia, by telephone. J.A. 220–221. April stated that she was looking through Glass's cell phone "around the end of December of 2019" and she "discovered several images and videos of child pornography" depicting children who appeared to be "around 10 years old or younger . . . engaged in sex acts" or nude. J.A. 69, J.A. 230. After speaking with April, Lowrance contacted Brown, who had investigated April's 2016 allegations. J.A. 69, J.A. 221–223. Brown agreed to meet with April to take a statement. J.A. 69, J.A. 221–223.

On January 28, Brown interviewed April in Max Meadows, Virginia. J.A. 69, J.A. 407–408. April reported that she had seen at least 50 photographs on Glass's phone. J.A. 70. These images included videos or images depicting (1) a child no older than 18 months with a bag over their head and someone touching the child's genital area, (2) children 10 years old or younger with their pants down, (3) the vagina of a prepubescent girl, (4) an adult male forcing a prepubescent girl to put his penis into her vagina, and (5) an adult male forcing his penis into an infant's mouth. J.A. 70. April reported to Brown that Glass used social media to coax young girls onto a messaging platform and to send him photos. J.A. 70. April also reported that when she confronted Glass about the child pornography, he stated that "the photos downloaded to his phone for no reason." J.A. 70. April described Glass's cell phone and the computers that the police would find in the home Glass shared with his father. J.A. 70.

As part of his investigation, Lowrance also ran a search of April's criminal history. J.A. 225. Lowrance learned that there was a pending misdemeanor larceny charge but did not know anything about

that charge.   J.A. 225.   In addition to this charge, Lowrance knew about another investigation related to April's alleged theft of items from a Walmart in Virginia but was not aware of any charges related to that investigation.   J.A. 261–262, J.A. 264, J.A. 389.   The criminal-history report did not reflect and Lowrance was also not aware that April had also admitted stealing a cell phone while working in July of 2019.   J.A. 105, J.A. 257–259, J.A. 365, J.A. 370.

On February 10, 2020, Lowrance obtained a search warrant authorizing the search of Glass's home and electronic devices.   J.A. 66–67, J.A. 738, J.A. 770.   In the affidavit supporting the search warrant, Lowrance summarized his investigation into April's allegations.   J.A. 69–70, J.A. 228.   Lowrance noted that April told him that "she left around the end of December" and was "living in Virginia."   J.A. 69.   In addition to describing the images and videos April reported seeing on Glass's cell phone, Lowrance stated that he looked up Glass's information and learned that he "had been investigated in Virginia for similar reports in 2012 and 2016."   J.A. 69–70.

The police executed the search warrant on the morning of February 11, seizing four cell phones and two laptop computers. J.A. 80, J.A. 718–720, J.A. 739–743. One of the cell phones seized was an LG LS777 that belonged to Glass. J.A. 80, J.A. 742–743, J.A. 904. Glass was at work when the police searched his home, and police went to his workplace where he turned over a Samsung S9 cell phone to be searched. J.A. 87, J.A. 244, J.A. 780–783, J.A. 1014. Lowrance obtained a second search warrant, authorizing a search of the Samsung S9. J.A. 82–83, J.A. 244–245, J.A. 744. Lowrance's affidavit in support of the second warrant included the same information as the affidavit submitted in support of the first search warrant, along with a description of the officers' interaction with Glass. J.A. 85–87.

Homeland Security agents, at Lowrance's request, searched both of Glass's cell phones — the Samsung S9 and the LG. J.A. 745, J.A. 799, J.A. 812, J.A. 825, J.A. 830–832. On the Samsung S9, agents found 395 unique image files depicting child sexual abuse. J.A. 843–846. The images in the Samsung S9 were cache image files, meaning that someone had at one time accessed the images using the cell phone

12

but the images could no longer be viewed by a user of the phone. J.A. 843–846, J.A. 924. Agents also found evidence that Glass had saved links to and accessed a website called MEGA, which contains hundreds of shared videos of "child exploitation material." J.A. 847–857, J.A. 862–863, J.A. 891.

On Glass's LG cell phone, agents found evidence that Glass had downloaded the MEGA application, giving him quick access to the shared images and videos of child sexual abuse. J.A. 900, J.A. 912–913. Agents also found 72 unique image files and 21 unique video files depicting child pornography. J.A. 909–910. One of these videos depicted an adult male, wearing headphones, twice having sexual intercourse with an infant as the child screams. J.A. 914, J.A. 1340. The video was downloaded onto the LG phone at 8:51 p.m. on February 3, 2020. J.A. 914–915, J.A. 1098. A second video, downloaded from the MEGA application, depicted an adult male penetrating vaginally two young girls repeatedly and was last accessed on the LG phone at 9:15 p.m. on February 3. J.A. 916–921, J.A. 1100, J.A. 1340. Finally, a third video, also downloaded from the MEGA application, depicted an

adult male penetrating vaginally a young girl and was last accessed at 9:54 p.m. on February 4.   J.A. 921–923, J.A. 1103, J.A. 1341.   In addition to these videos, agents found videos on the LG phone depicting the sexual abuse of young girls, including another infant child.   J.A. 925–935, J.A. 1321.

## B. Glass is charged with federal child-pornography offenses.

A federal grand jury indicted Glass and charged him with three counts of receiving child pornography, 18 U.S.C. § 2252A(a)(2), (b)(1); and one count of possessing child pornography involving a minor under 12 years old, 18 U.S.C. § 2252A(a)(5)(B), (b)(2).   J.A. 15–16.   The grand jury alleged that first receipt offense occurred "[o]n or about February 4, 2020"; the second receipt offense occurred "[b]etween on or about January 8, 2020, and February 4, 2020"; and the third receipt offense occurred "[b]etween on or about January 8, 2020, and on or about February 5, 2020."   J.A. 15–16.   Glass was released on bond after his initial appearance.   J.A. 1324.   As conditions for his pretrial release, Glass was not permitted to have unmonitored computer or internet-connected devices, could not have unapproved social-

14

networking accounts, and could not access pornographic websites.    J.A. 1324.

During a visit to Glass's home in November of 2021, a probation officer found him in possession of three unmonitored cell phones, among other contraband.    J.A. 1325.    On the cell phones, the probation officer found that Glass had accessed multiple pornographic websites and social-networking accounts.    J.A. 1325.    The probation officer also found "numerous videos" of a young girl and a young boy.    J.A. 1325. Glass reported that the children were his ex-wife's children from another marriage and that "he was once charged with sexually assaulting the young girl, but the charges were dropped."    J.A. 1325.

The following month, the probation office moved to revoke Glass's pretrial release.    J.A. 1324–1326.    After a hearing, the district court modified Glass's conditions of release.    J.A. 5.

## C.    The district court denies Glass's motion to suppress after a *Franks hearing*.

In November of 2022, Glass moved to suppress the evidence seized during the search of his home and the search of his cell phones.    J.A. 49–65.    Glass asserted that the search warrants were obtained by

including false and misleading information in the affidavits and that police omitted from the search-warrant affidavits facts that would have defeated probable cause had the issuing judge known them.   J.A. 49, J.A. 53–64.   In particular, Glass argued that Lowrance knowingly and recklessly omitted information establishing that each of the earlier investigations into Glass's alleged illegal behavior involving child sex abuse or pornography had been "dismissed as unfounded," that Glass's wife April was the informant whose allegations had been deemed unfounded, and that April had been arrested for larceny in 2019.   J.A. 49.   Glass argued that the search warrants were invalid and requested a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).   J.A. 49.

The district court, the Honorable Kenneth D. Bell, conducted a *Franks* hearing in February of 2023.   J.A. 156–305.   Brown testified during the hearing and summarized her 2016 investigation into the child-pornography images that April had sent to Cox.   J.A. 160–169.   Brown testified that she did not find Glass's explanation of the images April had found on his phone or his assertions that he had lost his phone to be credible.   J.A. 169.   She did, however, find April to be

credible. J.A. 172. She noted that April was able to identify a website that Glass initially denied having accessed but later admitted accessing. J.A. 172. Other information she had reported was also later corroborated. J.A. 172. Brown explained that April "never told [Brown] anything that [she] found not to be true." J.A. 172.

Brown also described assisting Lowrance during the investigation in 2020. J.A. 175–176. Brown testified that she remembered the earlier case that she had held open, "hoping that something could have been done with it," and remembered Glass. J.A. 176. She readily assisted Lowrance by agreeing to interview April in 2020. J.A. 175. And as she had in 2016, Brown found April's account of finding child pornography on Glass's cell phone to be credible. J.A. 176.

Lamberth described his 2017 investigation into April's tip that there was child pornography on a tablet in her husband's home. J.A. 201–206. He explained that when he closed the case as "unfounded," it was not because he thought that April had given false information. J.A. 206. Instead, "unfounded" was one among a menu of "dispositions" on the SBI report and the one to use when the police did

17

not find "any particular evidence that the crime" had occurred. J.A. 206, J.A. 214.

Lowrance testified that he asked Brown to personally interview April in 2020 because Brown would be able to "pick up on . . . body language" and he knew that Brown already had a rapport with April. J.A. 224. When asked why he did not include in his search-warrant affidavits the fact that the 2012 charges against Glass were dismissed and the 2016 investigation ended as "unfounded," Lowrance responded that he did not find the information to be relevant to the probable-cause calculus based on April's observations in 2019. J.A. 235, J.A. 237, J.A. 273, J.A. 279.

Lowrance explained that cases can be dismissed for various reasons, including because a witness backed out. J.A. 236. And Lowrance testified that he was not aware of any allegation that April provided false or unreliable information in the 2016 investigation. J.A. 238. Lowrance answered, "No, ma'am," when asked whether he omitted the dismissal of the 2012 charges because he did not want the superior court judge responsible for issuing the search warrants to

know they had been dismissed.   J.A. 236.   He similarly answered,

"Absolutely not," when asked if he omitted from the affidavit the

information that no charges were brought after the 2016 investigation

because Brown could not find any agency in North Carolina to prosecute

the case against Glass.   J.A. 238.   Lowrance denied that he thought

including the information would harm his chances of obtaining the

search warrants.   J.A. 273–274, J.A. 279–280.

Lowrance testified that he knew about the 2017 investigation of

Glass's tablet when he submitted his search-warrant affidavits in 2020.

J.A. 238–239.   Lowrance testified that he did not believe the 2017

investigation was relevant to his probable-cause calculus in 2020 and

that he did not omit that information because he did not want the

issuing judge to know about it.   J.A. 240.   Lowrance also denied that if

he had informed the court about the 2017 allegations and negative

search results, it might have hurt his chances of obtaining the search

warrants.   J.A. 288.

Lowrance testified that he learned during his investigation that

April had been charged with misdemeanor larceny in April of 2019, but

he was not aware of any other pending charges against her. J.A. 241.
Lowrance denied that April was an informant for the sheriff's office,
explaining that April was not offered any benefit in exchange for her
information. J.A. 241–242. When asked why he did not include April
Glass's larceny charge in the affidavits, Lowrance explained that he
"was working a [child pornography] case, not a larceny case," and he did
not believe the larceny charge was "relevant to [his] probable cause
concerning child pornography photos." J.A. 241, J.A. 297. Lowrance
testified that he was aware that April and Jessie Glass were separated
at the time he interviewed her. J.A. 242, J.A. 248, J.A. 289.

The district court denied Glass's motion to suppress. J.A. 472–
488. The district court described the *Franks* standard as requiring a
defendant to show (1) a false statement or material omission in the
search-warrant affidavit that was made knowingly and intentionally, or
with reckless disregard for the truth, and (2) that with the affidavit's
false material set to one side, its remaining content is insufficient to
establish probable cause. J.A. 478. The court explained that "[a]
showing that [the police officer] acted negligently, or that the omission

was merely an innocent mistake, will not warrant suppression." J.A. 479.

Addressing the omissions upon which Glass relied, the district court found that the affidavits accurately stated that Glass had been investigated for similar reports in Virginia in 2012 and 2016 and that April and Jessie Glass lived in different states. J.A. 480. The court found that a competent reader likely would conclude that the 2012 and 2016 investigations did not result in charges or convictions and that Jessie and April Glass were separated. J.A. 480. The court also found that Glass had not shown that Lowrance intended to mislead the warrant-issuing court when he omitted April's role in the 2016 investigation, the fact of the 2017 investigation, and April's pending larceny charges from the affidavits. J.A. 481.

The district court found Lowrance's testimony that he did not intend to mislead the court to be credible, while Glass offered no evidence to contradict Lowrance's testimony. J.A. 481. The court explained that Lowrance may have been wrong in his assessment that the information about the 2017 investigation was not relevant to the

probable-cause determination.   J.A. 483.   But an honest mistake, even

if negligent, is insufficient to satisfy *Franks*'s intentionality

requirement.   J.A. 483.

The district court also found that none of Lowrance's omissions,

even when viewed together, would alter the probable-cause finding.

J.A. 484.   The court found that the affidavits effectively disclosed that

the 2012 and 2016 investigations did not result in any convictions and

that the Glasses were living apart.   J.A. 484.   The court also found

that the omission of April's role in the 2016 investigation and her

involvement in pending larceny investigations did not cast doubt on her

credibility.   J.A. 484.   The court acknowledged that North Carolina

law enforcement declined to prosecute the 2016 allegations but found

that there was no evidence they declined because of concerns about

April Glass's reliability.   J.A. 484.   Similarly, the court found that the

omission of the 2017 investigation, April's role in prompting that

investigation, and its closure as "unfounded" did not undermine the

court's probable-cause finding because there was no evidence that April

Glass was untruthful during that investigation.   J.A. 485.   The court

noted that after interviewing April in person, Detective Brown found her allegations to be credible, and April's tip was "extremely detailed" and based on her personal knowledge.   J.A. 485.   And at the time of the affidavits, April was only charged with one unrelated larceny offense.   J.A. 485.   The court concluded that even though the omission of the 2017 investigation "somewhat reduce[d] Ms. Glass's reliability," viewed in their entirety, the affidavits furnished probable cause to believe that evidence of a crime would be found in Glass's home and cell phones, even if the omitted information had been included.   J.A. 486.

### D.   A jury finds Glass guilty of four child-pornography offenses, and the district court sentences Glass to 180 months in prison.

Glass's case proceeded to trial.   J.A. 668.   After the parties presented their cases to the jury, the United States presented its closing argument.   J.A. 1039.   The United States described each of the receipt counts against Glass and argued that Glass's downloading of child-pornography videos at 8:51 p.m. on February 3, 2020; at 9:15 p.m. on February 3, 2020; and at 9:54 p.m. on February 4, 2020, supported counts one through three, respectively.   J.A. 1039–1041.   The United

States told the jury that it was relying on the remaining child pornography found on Glass's phone to support count four — the child-pornography-possession count.   J.A. 1043.

The district court instructed the jury that to find Glass guilty of the receipt offenses, the jury was required to find that (1) he knowingly received child pornography as alleged in the bill of indictment; (2) the child pornography had been shipped or transported in or affecting interstate or foreign commerce; and (3) when Glass received the child pornography, he knew that it was child pornography.   J.A. 1072. Reciting the dates of the offenses as alleged in the indictment, the district court instructed the jury that the proof "need not establish with certainty the exact date of the alleged offense" and that it was sufficient if the evidence established that the offense was committed on a date "reasonably near the date or dates alleged in the indictment."   J.A. 1070–1071.   The jury found Glass guilty of all four child-pornography offenses, and the jury found that Glass possessed child pornography involving a minor under 12 years old.   J.A. 1085, J.A. 1241–1242.

The district court's probation office submitted a presentence report and found that the Sentencing Guidelines advised a sentence of between 135 and 168 months in prison, based on a total offense level of 33 and a criminal-history category of I.   J.A. 1349.   The report reflects that Glass earned more than $74,200 during 2021, his last year of employment, and that he had previously earned between $7,319 and $38,297 in the four years before that.   J.A. 1349.   Glass owed $34,671 in retail and medical debt.   J.A. 1349.

The probation office noted that the district court was required to impose a special assessment of at least $5,000 per count as long as Glass was not indigent under the Justice for Victims Trafficking Act of 2015, 18 U.S.C. § 3014.   J.A. 1351.   The probation office noted that the court was also required to impose an assessment under the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, 18 U.S.C. § 2259A.   J.A. 1351.   For a defendant convicted of trafficking but not producing child pornography, the Act requires the assessment of not more than $35,000.   J.A. 1351; 18 U.S.C. § 2259A.

Glass objected to the imposition of any special assessment. J.A. 1356, J.A. 1372–1373. He argued that he was indigent. J.A. 1356, J.A. 1372–1373. And he argued that he was in poor health. J.A. 1356, J.A. 1372–1373.

While out on bond awaiting sentencing, Glass possessed child pornography again. J.A. 1289, J.A. 1376–1377, J.A. 1390. A cell phone he possessed contained anime images depicting the sexual abuse of children. J.A. 1289, J.A. 1376–1377, J.A. 1390. And it contained an image depicting a minor girl engaging in sexual activity with her mother. J.A. 1289, J.A. 1376–1377, J.A. 1390.

The district court "adopted the information in the presentence report without change" and sentenced Glass to 180 months in prison on each count, to be served concurrently. J.A. 1247, J.A. 1306–1307, J.A. 1315, J.A. 1415. Finding Glass to be indigent, the district court declined to impose any assessment under the Justice for Victims Trafficking Act, 18 U.S.C. § 3014. J.A. 1418. The court found, however, that "he could and should be able to pay some assessment with respect to Section 2259A," the Amy, Vicky, and Andy Act, and

imposed a $5,000 assessment to be paid in $50 installments to begin 60 days after release from imprisonment. J.A. 1310, J.A. 1315. The court also ordered Glass to pay $6,000 in restitution. J.A. 1310, J.A. 1418.

## SUMMARY OF THE ARGUMENT

I.    The district court properly denied Glass's motion to suppress.   The district court considered each of the facts Glass asserts Lowrance improperly omitted from his search-warrant affidavits and did not clearly err in finding that Lowrance did not intentionally mislead the judge who issued the warrants or act with reckless disregard of the risk of misleading the judge.   As the district court found, there is no evidence that April ever provided false information to the police, and the district court reasonably credited Lowrance's testimony that he did not omit the information to mislead the judge or because he thought its omission would make it more likely the judge would find probable cause.

The district court also properly found none of the omitted facts material to the determination of probable cause.   April's information

about Glass's possession of child pornography was detailed and based on personal knowledge.   And Lowrance investigated Glass's criminal history and April's.   That investigation yielded information consistent with the possibility that Glass would commit a child-pornography offense, and it yielded no information suggesting that April had ever lied to the police.   Had Lowrance included all of the information Glass suggests he should have included, more than a fair probability still would have existed that police would find evidence of child pornography in Glass's home or cell phones.

II.    The district court properly entered judgment on each of Glass's three receipt offenses, and Glass cannot show any double jeopardy error, let alone a plain error that affected his substantial rights.   To offend the Double Jeopardy Clause, which Glass invokes for the first time on appeal, the imposition of cumulative punishments must be based on the same offense in law and in fact.   The record makes clear that the jury found Glass guilty of three receipt offenses based on his receipt of three different videos depicting child pornography at three different times.   Glass has not identified any

authority finding a double-jeopardy violation under similar circumstances. And he cannot show an error that affected his substantial rights or that this Court should exercise its discretion to correct because the jury heard evidence of three different receipt offenses.

III. The district court acted within its discretion when it imposed a $5,000 assessment under the Amy, Vicky, and Andy Act, 18 U.S.C. § 2259A. That statute required the court to impose an assessment up to $35,000 and to consider the factors described in 18 U.S.C. § 3553(a) and the financial factors described in 18 U.S.C. § 3572 in determining the amount of the assessment. The district court's sentencing explanation made clear that it considered those factors, including those related to Glass's indigency. And it settled on an assessment of only a fraction of the amount authorized by the statute. The court's explanation demonstrated that it made an individualized assessment, and its decision was reasonable.

# ARGUMENT

## I. The district court properly denied Glass's motion to suppress.

### A. Standard of Review

When reviewing a district court's ruling on a motion to suppress, this Court ordinarily reviews "the court's legal conclusions de novo and its factual findings for clear error." *United States v. Norman*, 935 F.3d 232, 236 (4th Cir. 2019).

### B. Discussion

The district court properly denied Glass's motion to suppress the evidence found in his home and on his cell phones. To establish a *Franks* violation, Glass must show that Lowrance "either intentionally or recklessly made a materially false statement or that [he] intentionally or recklessly omitted material information from the affidavit." *United States v. Wharton*, 840 F.3d 163, 168 (4th Cir. 2016). Because the district court did not clearly err when it found that Lowrance did not intentionally or recklessly omit information that was material to the finding of probable cause, the court properly denied Glass's motion to suppress.

1. *The Franks Standard*

"An accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit." *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011). The Supreme Court identified in *Franks* a "narrow exception to this rule" for "perjury or reckless disregard" with respect to information material to establishing probable cause. *United States v. Pulley*, 987 F.3d 370, 376 (4th Cir. 2021) (quoting *Allen*, 631 F.3d at 171, and *Franks*, 438 U.S. at 171). The "search-warrant affidavit" enjoys a "presumption of validity." *Id.* at 377.

As described above, *Franks* established a two-prong test that a defendant must satisfy to establish a *Franks* violation: (1) A false statement made intentionally or with reckless disregard for the truth, and (2) the false statement was material to the finding of probable cause. *United States v. Lull*, 824 F.3d 109, 114 (4th Cir. 2016). "Allegations of negligence or innocent mistake are insufficient" to meet the intentionality standard. *Pulley*, 987 F.3d at 376 (quoting *Franks*, 438 U.S. at 155–56). And "reckless disregard in the *Franks* context requires a showing that the affiant personally recognized the risk of

making the affidavit misleading." *Id.* The standard also requires proof of "materiality." *Id.* "[I]f the allegedly false statements are not necessary for the probable cause finding, the accused is not entitled to a *Franks* hearing." *Allen*, 631 F.3d at 171.

A defendant may also bring a *Franks* challenge "when the affiant has omitted material facts from the affidavit." *Pulley*, 987 F.3d at 376. "A defendant requesting a *Franks* hearing based on claims of omissions faces an even higher evidentiary burden than when he bases his claims on false statements," *United States v. Moody*, 931 F.3d 366, 374 (4th Cir. 2019), because an "affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation." *Pulley*, 987 F.3d at 377. The omission must "mak[e] the affidavit deceptive." *United States v. Tate*, 524 F.3d 449, 455 (4th Cir. 2008). And "the omission must be 'designed to mislead' or must be made 'in reckless disregard of whether it would mislead.'" *Id.* (quoting *United States v. Colkley*, 899 F.2d 297, 299–300 (4th Cir. 1990)). The inclusion of the omitted information, moreover, must "defeat a probable cause showing." *Id.* at 455.

2. *The district court did not clearly err when it found that Lowrance did not omit information with an intent to mislead or in reckless disregard of whether it would mislead.*

The district court reasonably found that Lowrance did not omit information with the intent to mislead, or in reckless disregard of the risk that it would mislead, the superior court judge who issued the search warrants authorizing the searches of Glass's home and cell phone. Lowrance testified that he did not omit any information that he believed was relevant to the probable-cause calculus, and the district court did not hear any evidence suggesting otherwise.

Addressing the dismissal of the 2012 sodomy charges against Glass, Lowrance explained that he did not believe that the dismissal of the charges against Glass was relevant to probable cause because he did not know why they were dismissed. J.A. 236. Charges can be dismissed, Lowrance explained, for "various reasons" unrelated to the truth of the allegations against the defendant, including, for example, when a key witness "back[s] out." J.A. 236. This explanation is reasonable, and the district court could properly credit Lowrance's

testimony that he did not believe the dismissal of the 2012 charges against Glass to be relevant.

Lowrance's testimony that he did not believe the closure of the 2016 investigation against Glass to be relevant was also credible and supported by circumstantial evidence. When asked whether he omitted the information that the 2016 investigation into Glass's possession of child pornography was closed because Virginia State Police Officer Heather Brown was unable to find a North Carolina agency to investigate or prosecute the case to keep that information from the judge deciding whether to issue the search warrants, Lowrance replied, "Absolutely not." J.A. 238. Lowrance testified further that he was not aware of any allegation that April had provided false or unreliable information to Brown, nor did he have any information that Brown found April's account untrustworthy. J.A. 238. In fact, after interviewing Cox, April, and Glass in 2016, Brown found the information April provided about finding child pornography on Glass's cell phone to be credible. J.A. 172. As Brown explained to the district court, April provided information about Glass's website use that

was later corroborated, and April, Brown testified, "never told [her] anything that [she] found not to be true." J.A. 172. By contrast, Brown did not find Glass's explanation or his assertions that he had lost his phone to be credible. J.A. 169.

The district court also reasonably credited Lowrance's testimony that he did not intend to mislead the superior court when he omitted from the search warrants information about the 2017 investigation into April's allegations that Glass had child pornography on his tablet. Lowrance testified that he did not believe that this investigation was relevant to April's 2019 allegations and that he did not omit the information because he "didn't want the state superior court judge to know about it." J.A. 240. Moreover, Lamberth testified that he did not close the investigation as "unfounded" because April Glass had lied. J.A. 206. Although the search of the tablet Glass handed over to the police did not yield evidence that Glass possessed child pornography, Glass did not deny that he had viewed child pornography, stating only that if he had, he "did not dwell on it." J.A. 96. And after telling Lamberth that there "should not be any underage pornography" on the

35

tablet, "tears well[ed] up in [Glass's] eyes" when Lamberth asked if there was anything Glass wanted to tell him about. J.A. 96. All of this evidence supports the district court's finding that Lowrance's decision not to include the 2017 investigation in his search-warrant affidavits was not intended to mislead the superior court judge.

The district court also reasonably found that Lowrance did not omit information about April's criminal history with an intent to mislead the judge who would issue the search warrants. Lowrance testified that he was aware of the 2019 misdemeanor larceny charge against April, but he did not believe this larceny charge was relevant to whether there was reason to believe that police would find evidence of child pornography in Glass's home or on his phone. Lowrance explained that April's theft of something that did not belong to her did not make her a liar. J.A. 241.

Lowrance's testimony that a theft charge does not necessarily undermine the reliability of a tipster's report of criminal activity is consistent with Brown's testimony that she does not typically run a background or record check on a victim or complainant. Brown

explained that someone's background as a felon or crime suspect "does not mean they cannot be a complainant with good information." J.A. 174. If Brown learns of inconsistencies in a complainant's information or "some specific motive" of the complainant for wanting to get back at the person alleged to be committing a crime, Brown explained, she will check the person's criminal history. J.A. 174–175. But without a reason to suspect the complainant may be lying, she does not run a background check because she does not want to appear to take less seriously allegations of crime from someone with a history of interaction with the police. J.A. 174. Having heard from two law-enforcement officers that a complainant's criminal history does not make their information less reliable, the district court could reasonably credit Lowrance's testimony that he did not believe that April's 2019 larceny charge was relevant to the probable-cause determination. Each of these credibility determinations by the district court was reasonable, and this Court defers to credibility determinations related to a *Franks* claim, in any event. *Pulley*, 987 F.3d at 378.

Finally, the district court reasonably found that Lowrance did not intend to mislead when he omitted from the search-warrant affidavits a statement that April and Jessie Glass were separated or that April had complained about Glass in emails to Lowrance. Lowrance included in the affidavits that April had provided the tip to the Iredell County Sheriff's Office and had described finding numerous images of child pornography on Glass's phone at the end of December 2019. J.A. 69. Lowrance also stated that April had "left around the end of December" and was "living in Virginia." J.A. 69. Although Lowrance did not describe them as married in the search-warrant affidavits, April and Jessie Glass shared a last name, Lowrance described April as having "left," Lowrance noted that Brown interviewed April at her mother's house in Virginia, and Lowrance did not identify any other familial relationship between them. From this information, along with the nature of the images April reported she had found on Glass's cell phone, a judge would likely have concluded that April and Jessie Glass were a couple and were separated.

Even if a reader would not infer from the affidavit that April and Glass were separated, the district court could reasonably find that Lowrance did not omit information about the state of April and Jessie Glass's marriage because he thought its inclusion would make a probable-cause finding less likely. Lowrance took several measures to assess the credibility of April's information, including interviewing April over the phone, checking both April's and Glass's criminal histories, and asking an out-of-state law-enforcement officer who had previously investigated claims of April's against Glass to personally interview her. He noted in the affidavits that Glass had been investigated in 2012 and 2016 without suggesting that those investigations had yielded charges or convictions. He stated enough in the affidavit to suggest that April and Jessie Glass likely were living apart. And he testified credibly that although he was aware of the 2017 investigation into April's child-pornography allegations against Glass, he was not aware of any suggestion that she was lying when she reported that Glass had child pornography on a tablet he owned. The steps Lowrance took to assess the credibility of April's 2019 allegations,

along with his credible testimony that he did not omit any information that he believed was relevant to the probable-cause determination, support the finding that Lowrance was not trying to hoodwink the judge from whom he sought the search warrants.

This Court should reject Glass's suggestion that the district court clearly erred in finding that Lowrance did not omit the information intentionally or with a reckless disregard of the risk that it would mislead the judge because April Glass had a "history of stealing and providing inaccurate information to the police about Glass." *Def. Br.* at 24. Lowrance testified that he was only aware of one charge of misdemeanor larceny against April, and Glass offers no evidence that April had a history of providing "inaccurate" information to the police. Brown and Lowrance both testified that they were not aware of any inaccurate information April had provided to the police, and Lamberth testified that he did not believe April lied to him when she reported that Glass possessed child pornography in 2017. Even though the 2012, 2016, and 2017 investigations did not result in any legal determination that Glass had possessed child pornography or sexually abused a child,

each allegation may have been true. The allegations against Glass in 2012 were made by his first wife, Jennifer Glass, not April Glass, and Glass does not suggest that Jennifer Glass's allegations lacked credibility, even if the case against Glass was ultimately dismissed. Additionally, the strength of the United States' evidence in this case, along with Glass's twice violating the terms of his release on bond by continuing to access images or videos of young children suggests that Glass has long and consistently had a sexual interest in children and regularly violated the laws against viewing child pornography.

This Court should also reject Glass's suggestion that the district court clearly erred in finding that Lowrance did not intentionally mislead the judge because his statements that Glass was investigated in 2012 and 2016 "for similar reports" conveyed that the investigations did not result in any charges or convictions. Although the 2012 investigation did result in charges, the district court fairly concluded that a "competent reader" would have concluded that no convictions resulted from those investigations. The district court's finding that there is no evidence that Lowrance intentionally omitted information

from his affidavits and was, at most, negligent in his omissions is well supported by the evidence.

Glass's suggestion that the district court applied the wrong legal standard is also misplaced. Glass argues that the district court improperly required him to show that Lowrance "*subjectively* knew" the facts he omitted "would negate probable cause," J.A. 480 (emphasis in original), because recklessness requires only a person's "subjective awareness that their conduct *may* cause harm," *Def. Br.* at 26–27 (emphasis in original). This Court explained in *Miller v. Prince George's County, Maryland* however, that "[w]ith respect to omissions" in assessing an alleged *Franks* violation, "'reckless disregard' can be established by evidence that a police officer failed to inform the judicial officer of facts he *knew* would negate probable cause." 475 F.3d 621, 627 (4th Cir. 2007) (emphasis added) (cleaned up); *see also Pulley*, 987 F.3d at 378 (affirming district court's rejection of *Franks* claim where detective was not "in any way seeking to mislead," which "is required to prove reckless disregard in the *Franks* context"). The district court's statement that Glass was required to show that Lowrance "subjectively

knew" that the information he provided "would negate probable cause" is entirely consistent with this Court's description of the standard in *Miller*.

Moreover, even if the district court had articulated the reckless-disregard standard incorrectly, any error would be harmless for at least two reasons. First, there is no circumstantial evidence that Lowrance was aware of a risk that his omissions might negate probable cause. The district court found that Lowrance credibly testified that he did not believe the information he omitted from the affidavits was relevant to the probable-cause determination. J.A. 481. This Court defers to credibility determinations related to a *Franks* claim. *Pulley*, 987 F.3d at 378. And Lowrance could not have "personally recognized the risk of making the affidavit misleading," *id.* at 377, if he did not believe the information to be relevant at all.

Second, any error in the district court's understanding of the recklessness standard is harmless because, consistently with this credibility determination, the district court found that, at most, Lowrance made an "honest mistake" in believing the information about

the 2017 investigation to be irrelevant to the probable-cause
determination.   This finding, even if the court had incorrectly
articulated or applied the reckless-disregard standard, independently
defeats Glass's *Franks* claim on the intentionality prong of the test.
*Miller*, 475 F.3d at 627–28 ("A plaintiff's 'allegations of negligence or
innocent mistake' by a police officer will *not* provide a basis for a
constitutional violation." (emphasis in original) (quoting *Franks*, 438
U.S. at 171)).

Glass's assertion that the district court was compelled to find that
Lowrance's omissions were made recklessly because "[t]his Court's
decision in [*United States v.*]*Lull* puts to lie Lowrance's assertion" that
he did not believe the relevance of the facts he omitted is unfounded.
As the district court explained, *Lull*, in which the police sought and
obtained a search warrant based on a controlled buy conducted by an
informant whom the police *knew* had lied to them by trying to steal part
of the buy money, does not help Glass.   J.A. 482; *see Lull*, 324 F.3d 109,
112–13 (4th Cir. 2016).   Unlike in *Lull*, there is no evidence that April
ever lied to the police or engaged in misconduct related to her

allegations that Glass possessed child pornography. That Brown, who believed April had seen child pornography on Glass's phone, was not able to find a North Carolina agency willing to investigate or prosecute the case does not mean she lied. Similarly, the fact that Lamberth did not find a tablet containing child pornography or marijuana when he investigated April's 2017 allegations does not mean that she lied about seeing both in Glass's home. Also, unlike in *Lull*, the dishonesty Glass suggests April exhibited in 2016 and 2017 was not related to the 2020 investigation in which the search warrants were sought. Finally, Lowrance submitted his search-warrant affidavits years after April's alleged dishonesty, not on the same day of the known dishonesty of the witness in *Lull*.

There is likewise no evidence that April had a motive to falsely accuse Glass of his crimes. Although she was separated from Glass, no divorce proceedings were pending, such as proceedings related to custody or alimony, that might furnish a motive to falsely accuse Glass of wrongdoing. The mere fact that she left Glass after discovering the child pornography or complained about Glass in emails to Lowrance

45

does not support a finding that Lowrance subjectively knew that his omission of the fact of separation — even assuming he did omit that fact — risked misleading the superior court judge tasked with assessing probable cause.

The district court reasonably concluded that Lowrance may have been wrong that the 2017 investigation was irrelevant to the probable-cause determination. But Glass mentioned the 2012 and 2016 investigations and did not suggest those investigations had resulted in any finding of criminal liability. And there is not, as Glass suggests, *any* "[e]vidence of a deceptive pattern in the affidavit[s]," let alone a pattern sufficient to support a finding that Lowrance knew that his omissions risked misleading the judge who would consider his search-warrant applications. *Def. Br.* at 36.

> 3. *The district court properly found that any omissions were not material to the probable-cause determination.*

The district court also properly found that the information Glass complains about was not material because if Lowrance had included all of it, it would not have defeated probable cause. "Probable cause is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)

(cleaned up). This Court has described it as a "flexible standard" that requires "less of a showing than does the formal preponderance-of-the-evidence standard." *United States v. Ortiz*, 669 F.3d 439, 444 (4th Cir. 2012). It requires only a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Darosa*, 102 F.4th 228, 233 (4th Cir. 2024) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Glass's effort to satisfy the materiality prong of the *Franks* standard fails for many of the same reasons he cannot satisfy the intentionality prong. First, Lowrance's statement in the search-warrant affidavits that Glass was investigated in 2012 and 2016 for "similar reports," without an assertion that he had been charged or convicted, implied, at a minimum, that he had not been convicted. A prior conviction of a child-pornography crime would have bolstered the reliability of any report that Glass was committing that crime again, and Lowrance likely would have included that information had it existed, as a superior court judge who regularly reviews search-warrant applications would have known. Consequently, Lowrance's stating

definitively that the 2012 investigation resulted in no conviction and that the 2016 investigation resulted in neither charges nor a conviction would not measurably decrease the evidence of probable cause.

Similarly, had Lowrance informed the judge explicitly that April and Jessie Glass were separated when April reported that she had seen child pornography on Glass's cell phone, that information would not have defeated probable cause. The judge reviewing Lowrance's search-warrant application likely concluded that April, who was shared Glass's last name, was sufficiently close to Glass to have ready access to his cell phone, and had "left" and moved to a different state after finding him in possession of child pornography, was married to Glass. And even if the judge did not make that assumption, the fact of separation under these circumstances does not support an inference that April lied. The reasons a wife would choose to separate from a husband she discovered with the kind of child-pornography images that April described are obvious. And the district court did not hear any evidence that April and Glass were going through a particular dispute, such as custody or property distribution, that might support such an inference.

Had Lowrance described the 2017 investigation and its conclusion in the search-warrant affidavits, probable cause still would have supported the issuance of the search warrants. April described in detail the images she saw on Glass's cell phone. She described approximately how many images she had seen. She explained where and when she had seen the images. And she described Glass's explanation in response to her discovery, which deflected responsibility but did not deny their existence. That an investigation two years earlier, also prompted by a tip from April, had been closed because the police did not find child pornography or marijuana where she said it would be does not undermine the credibility of April's 2019 tip sufficiently to compel the conclusion that no fair probability existed that evidence of child pornography would be found in Glass's home or on his phone.

Finally, even had Lowrance informed the superior court judge that April had been charged with a misdemeanor larceny offense, the judge still would have found probable cause. April had not been convicted of the shoplifting at the time Lowrance submitted his search-warrant

affidavits, and although shoplifting is a crime of dishonesty, it can be committed without making false statements. *See United States v. Dunson*, 142 F.3d 1213, 1215 (10th Cir. 1998)

The information April gave the police about Glass's criminal activity was highly detailed and based on Glass's personal observation of the child pornography she found on his phone. Lowrance investigated Glass's criminal history and found that he had previously been charged and twice investigated for similar offenses. Lowrance asked another law-enforcement officer to interview April personally, and that officer found April's report to be credible. Lowrance's affidavits were not based only on a single, uncorroborated tip. They were based on the tip, multiple conversations with the tipster, and investigation into both the tipster and the subject of the search warrants. Lowrance received no information that any of April's previous reports had been false. That April was separated from Glass and that she had been charged with a shoplifting offense did not render her information unreliable. The district court properly found, therefore, that any omissions were not material because had Lowrance

included in his affidavits all of the information Glass suggests he should

have included, the search warrants would still have been supported by

probable cause.

## II. The district court properly entered judgment against Glass on all three receipt offenses because each offense is distinct.

### A. Standard of Review

This Court ordinarily reviews de novo preserved "questions

concerning the Double Jeopardy Clause." *United States v. Schnittker*,

807 F.3d 77, 81 (4th Cir. 2015). As Glass concedes, however, he did not

argue in the district court that it violated the Double Jeopardy Clause

by entering judgment against him on all three receipt convictions.

This Court reviews that claim on appeal, therefore, for plain error only.

*United States v. Bullis*, 122 F.4th 107, 112 (4th Cir. 2024). Under the

plain-error standard of review, this Court may correct an alleged error

only if: (1) there was error; (2) the error is plain; (3) the error affects the

defendant's substantial rights, which ordinarily requires a reasonable

probability that the error affected the outcome of the trial; and (4) the

error seriously affects the fairness, integrity, or public reputation of

judicial proceedings, warranting the exercise of this Court's discretion to correct the error. *United States v. Marcus*, 560 U.S. 258, 263 (2010); *United States v. Olano*, 507 U.S. 725, 732 (1993).

## B. Discussion

The district court did not violate the Double Jeopardy Clause when it entered judgment against Glass on all three receipt counts, let alone commit a plain error. The grand jury charged different dates or date ranges for each offense. The United States made clear that Glass's receipt of a unique video depicting child pornography supported each of the receipt charges. And the jury heard evidence to support the conclusion that Glass received each video at a different time during a 48-hour period. Because the totality of the circumstances establishes that Glass's three receipt offenses are "in law and in fact" distinct offenses, the district court's entry of judgment on all three convictions did not offend double jeopardy. *See Schnittker*, 807 F.3d at 81.

The constitutional guarantee of the Double Jeopardy Clause has two components: "The first provides protection against the imposition of cumulative *punishments* for the 'same offense' in a single criminal

trial; the second [provides protection] against being subjected to successive *prosecutions* for the 'same offense,' without regard to the actual imposition of punishment." *United States v. Ragins*, 840 F.2d 1184, 1187 (4th Cir. 1988) (emphasis in original); *see also United States v. Slocum*, 106 F.4th 308, 312 (4th Cir. 2024). The prohibition against the imposition of cumulative punishments for the same offense in a single criminal trial "attaches if the subject offenses 'are in law and in fact the same offense.'"[1] *Schnittker*, 807 F.3d at 81. In determining whether the offenses are the same in law and in fact, this Court considers "the entire record of the proceedings." *Id.* If the "entire record" makes clear that the jury convicted a defendant of the same

[1] This prohibition against entering judgment on multiple convictions based on the same offense is sometimes described, as in Glass's opening brief, as a prohibition against "multiplicity" or "multiplicitous charges." *See United States v. Benoit*, 713 F.3d 1, 17 (10th Cir. 2013). An indictment may also be defective on its face because it charges the same offense in more than one count, and that indictment defect of "multiplicitous charges" must be challenged in a pretrial motion or be waived. *See* Fed. R. Crim. P. 12(b)(3)(B)(ii). Because "multiplicity" can refer both to a judgment defect and to an indictment defect, with different timing requirements and different remedies applicable to each type of multiplicity defect, the United States avoids the term "multiplicity" in this argument.

child-pornography offense based on the same visual depiction, judgment should be entered against the defendant on only one of the convictions. *See United States v. Benoit*, 713 F.3d 1, 18 (10th Cir. 2013). If, on the other hand, the record permits a reasonable inference that the jury's convictions rested upon separate visual depictions, no basis exists for disturbing the jury's verdict.

The district court did not err when it entered judgment on all three of Glass's child-pornography-receipt convictions. The record makes clear that each conviction was supported by his receipt of a different video depicting child pornography. He was not therefore subject to cumulative punishments for the same offense.

The United States presented evidence that Glass downloaded three unique child-pornography videos at different times between February 3 and February 4, 2020. The jury heard evidence that Glass downloaded the first video, depicting an adult male wearing headphones as he rapes a screaming infant, at 8:51 p.m. on February 3, 2020. J.A. 914–915. Twenty-five minutes later, the United States' evidence showed, Glass downloaded a different video of an adult male

repeatedly raping two young girls.   J.A. 916–921.   And more than 24 hours later, at 9:54 p.m. on February 4, 2020, Glass downloaded a third video depicting an adult male raping a young girl.   J.A. 921–923.

In its closing argument, the United States described each of the receipt counts against Glass and argued that each of these videos supported counts one through three, respectively.   J.A. 1039–1041. And the indictment alleged slightly different dates for each offense, charging that count one was committed on or about February 4, 2020; count two was committed between on or about January 8 and February 4, 2020; and count three was committed between on or about January 8 and February 5, 2020.   J.A. 15–16.   The charges in the indictment did not identify each video by file name and the district court did not instruct the jury that it was required to find that Glass received a different image of child pornography to find him guilty of the receipt charges.   But the evidence presented, combined with the United States' closing argument, and the different date ranges alleged in the indictment, make clear that the jury found Glass guilty of three distinct child-pornography offenses.

The Tenth Circuit's decision in *Benoit* does not assist Glass. *Benoit* held that child-pornography possession is a lesser-included offense of child-pornography receipt. 713 F.3d at 18. And it held that the district court violated the Double Jeopardy Clause by entering judgment on both child-pornography-receipt and child-pornography-possession charges based on the same exact images. 713 F.3d at 18.

Although the indictment in *Benoit*, like Glass's indictment, used the same language for each challenged count, the similarity ends there. Unlike Glass's indictment, the indictment in *Benoit* also alleged the exact same date range in both counts. *Id.* And, unlike in Glass's case, "both the prosecutor and defense counsel" in *Benoit* "expressly stated to the jury that the two counts were based on identical conduct." *Id.* Finally, the United States carefully presented its evidence to identify the dates and times Glass downloaded each of his three videos. "[N]othing in the manner the evidence was presented at" Benoit's trial, in contrast, would have "suggest[ed] to the jury that the two counts related to distinct images." *Id.* It is not "clear" in this case, "[i]n light of the record as a whole," that Glass was convicted on each of the receipt

counts based on the same conduct.  *See id.* at 18.  *Benoit*, therefore, does not support Glass's claim of a double jeopardy violation.

Even if Glass could show a double-jeopardy violation, moreover, that error would not qualify as "plain."  An error is only plain if "(1) the explicit language of a statute or rule resolves the question or (2) at the time of appellate consideration, the settled law of the Supreme Court or this Court establishes that an error has occurred."  *United States v. Davis*, 855 F.3d 587, 595–96 (4th Cir. 2017).  Glass has not identified any decision of this Court or the Supreme Court that has recognized a double-jeopardy violation under circumstances similar to those in this case.  The jury found Glass guilty of the three receipt offenses after the United States presented evidence of three separate violations of the receipt statute and made clear in its closing argument which downloaded video supported which count of the indictment.  The entry of judgment based on those convictions is not obviously a violation of the Double Jeopardy Clause.

Glass also cannot satisfy his burden to show that the error he alleges affected his substantial rights, or that entry of judgment on all

three convictions seriously affects the fairness, integrity, or public reputation of judicial proceedings. The jury heard evidence that Glass downloaded three distinct videos depicting horrific child sexual abuse and that he downloaded each video at a different time within a 48-hour time period. The United States made clear in its closing argument that it was not asking the jury to find the defendant guilty of three receipt counts based on a single downloaded video. Instead, the United States asked the jury to find the defendant guilty based on one downloaded video per receipt count. Nothing in the court's instructions suggested the jury could find Glass guilty of three counts of receiving child pornography based on a single download. And Glass cannot show a reasonable probability that had the district court instructed the jury that it was required to find that Glass downloaded a different video to support each receipt count, the result of his trial would have been any different. Under these circumstances, Glass cannot show that any error affected his substantial rights. And fairness, integrity, and the public reputation of judicial proceedings does not support vacating any of Glass's convictions under the Double

Jeopardy Clause, and this Court should not exercise its discretion to correct the error, even if it occurred.

### III. The district court's imposition of a $5,000 assessment was procedurally reasonable.

#### A. Standard of Review

This Court reviews sentences for reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). Review for procedural reasonableness requires this Court to consider "whether the district court properly calculated the defendant's advisory guidelines range, gave the parties an opportunity to argue for an appropriate sentence, considered the 18 U.S.C. § 3553(a) factors, and sufficiently explained the selected sentence*United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019). In conducting this review, this Court reviews the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Walker*, 922 F.3d 239, 253 (4th Cir. 2019).

#### B. Discussion

The district court did not procedurally err in imposing an assessment of $5,000 under 18 U.S.C. 2259A. That provision directs that a district court "shall" assess "not more than $35,000 on any

59

person" convicted of a qualifying child-pornography-trafficking offense. 18 U.S.C. § 2259A(a)(2). When determining "the *amount* of the assessment," § 2259A(c) directs a court to consider the sentencing considerations described in 18 U.S.C. § 3553(a) and the factors that guide a court's imposition of a fine under 18 U.S.C. § 3572. 18 U.S.C. § 2259A(c) (emphasis added). The § 3572 factors include the defendant's income, earning capacity, and financial resources; the burden a fine will impose upon the defendant; the amount of any restitution; and the expected costs to the government of imprisonment or supervised release. When reviewing a district judge's exercise of his sentencing discretion, this Court considers "the record as a whole" to determine whether "the judge . . . had a reasoned basis for exercising his own legal decisionmaking authority." *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1966 (2018).

The record demonstrates that the district court acted within its discretion when it assessed Glass $5,000, complying with the statute's mandate to impose an assessment, while exercising its discretion to impose an amount $30,000 below the maximum the statute authorizes.

First, the district court recognized Glass's indigency and, on that basis, properly declined to impose an assessment under 18 U.S.C. § 3014, which requires an assessment of $5,000 on any "non-indigent person" convicted of child-pornography offenses. J.A. 1418. Indigency is the only relevant consideration under § 3014, which makes a $5,000 assessment mandatory for "any non-indigent person" convicted of a qualifying offense" 18 U.S.C. § 3014(a). Under § 2259A, in contrast, the extent of the defendant's financial resources is one of many considerations. 18 U.S.C. §§ 2259A, 3572. And the district court acted within its discretion in determining that Glass's indigency did not relieve the court of its obligation to impose at least some assessment under § 2259A.

Second, the court considered the § 3553(a) sentencing factors, including the seriousness of Glass's offense conduct, the need to promote respect for the law, the need to provide just punishment for the offense, the need to deter Glass and others from committing similar crimes, and the need to protect the public, finding that those factors warranted an upward-variance prison sentence of 180 months. J.A.

61

1417.  And the court found that Glass's conduct in violating both pre-trial and post-trial release conditions showed that Glass was likely to continue committing child-pornography offenses and was unwilling to comply with court orders.  J.A. 1303–1304.  Considering these aggravating sentencing factors, the district court could reasonably conclude that a modest but significant assessment was appropriate. Regardless of Glass's financial wherewithal, a smaller assessment would be inadequate to reflect the seriousness of Glass's offense and achieve the purposes of punishment.

Third, in the light of Glass's earning capacity, as evidenced by his ability to earn more than $74,000 in 2021, the district court's finding that Glass "could and should be able to pay" a $5,000 assessment under § 2259A, was reasonable, particularly at a rate of $50 per month beginning 60 days after he was released from prison.  J.A. 1310. Considering the sentencing factors described in § 3553(a) and the financial factors described in § 3572, the district court acted within its discretion in imposing the $5,000 assessment.

Although the district court did not mention restitution in its statement imposing the assessment, it imposed restitution immediately after imposing the assessment, making clear that the court considered each of the potential financial penalties together. Additionally, when considering the district court's explanation of Glass's sentence and not just its statement imposing the assessment, its explanation was adequate to demonstrate that the district court conducted an individualized assessment of Glass's circumstances and to facilitate this Court's review.

## CONCLUSION

Because the district court properly denied Glass's motion to suppress, properly entered judgment on each of Glass's convictions, and acted within its discretion in imposing a comparatively modest assessment under § 2259A, the United States respectfully requests that this Court affirm the judgment of the district court.

## REQUEST FOR DECISION ON THE BRIEFS
## WITHOUT ORAL ARGUMENT

The United States does not believe that oral argument will assist the Court in any material way and requests that this appeal be decided on the briefs.

Respectfully submitted, this 29th day of January, 2025.

DENA J. KING
UNITED STATES ATTORNEY
s/ Amy E. Ray
Amy E. Ray
NC Bar Number # 22762
Assistant United States Attorney
U.S. Courthouse, Room 233
100 Otis Street
Asheville, North Carolina 28801
Telephone: (828) 271-4661
Fax: (828) 271-4670
E-mail: Amy.Ray@usdoj.gov

# CERTIFICATE OF COMPLIANCE

1.     This brief has been prepared using Microsoft Word 2010, Century Schoolbook, 14 point typeface.

2.     EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains ___11,789___ words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.   If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

s/ Amy E. Ray
Assistant United States Attorney
USAO Asheville, NC

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have this day served a copy of the above upon Glass by serving his attorney of record, Melissa S. Baldwin, through electronic case filing.

This 29th day of January, 2025.

s/ Amy E. Ray
Assistant United States Attorney
USAO Asheville, NC