No. 24-4193

# United States Court of Appeals
## for the
## Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

— v. —

JESSIE LEROY GLASS, JR.,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT STATESVILLE

# REPLY BRIEF OF APPELLANT

MELISSA S. BALDWIN
Assistant Federal Public Defender
FEDERAL PUBLIC DEFENDER
  FOR THE WESTERN DISTRICT
  OF NORTH CAROLINA
1 Page Avenue, Suite 210
Asheville, NC 28801
(828) 232-9992

*Counsel for Appellant*

# Table of Contents

**Page**

Table of Authorities ................................................................................ ii

Introduction .............................................................................................1

I.      Glass established that his Fourth Amendment rights under *Franks v. Delaware* were violated ...................................................2

        A.      The extent of information Lowrance kept from the magistrate's review .....................................................................2

        B.      The district court's reliance on an improper recklessness standard renders its findings on Lowrance's *mens rea* clearly erroneous ............................................................5

        C.      The evidence establishes that Lowrance more likely than not recklessly omitted facts undermining the accuser's reliability from the warrant application ................................12

        D.      When April's history is included, probable cause does not exist based on her accusation and the fact Glass was merely investigated for similar accusations in the past ....................16

II.     The district court plainly erred by punishing Glass for committing three receipt offenses, when Glass was only convicted of one offense .......................................................................21

III.    The district court failed to provide an individualized explanation for its $5,000 assessment ..................................................25

Conclusion ............................................................................................28

# Table of Authorities

**Page(s)**

**Cases:**

*Anderson v. City of Bessemer City, N.C.,*
470 U.S. 564 (1985)........................................................................7, 10

*Ball v. United States,*
470 U.S. 856 (1985).................................................................. 22, 24

*Davis v. City of Little Rock,*
122 F.4th 326 (8th Cir. 2024) .................................................12

*Farmer v. Brennan,*
511 U.S. 825 (1994)................................................................11

*Franks v. Delaware,*
438 U.S. 154 (1978)........................................................ *passim*

*Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.,*
160 F.3d 177 (4th Cir. 1998) .................................................3

*Illinois v. Gates,*
462 U.S. 213 (1983)................................................. 3, 9, 10

*Jiminez v. Mary Washington College,*
57 F.3d 369 (4th Cir. 1995) ..................................................11

*Miller v. Prince George's County, MD,*
475 F.3d 621 (4th Cir. 2007) ...............................................6

*Neder v. United States,*
527 U.S. 1 (1999)................................................... 22, 23

*Ornelas v. United States,*
517 U.S. 690 (1996)...............................................................17

*Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections,*
827 F.3d 333 (4th Cir. 2016) ...............................................7, 8

*United States v. Ajayi,*
808 F.3d 1113 (7th Cir. 2015) .............................................25

*United States v. Bowie,*
232 F.3d 923 (D.C. Cir. 2000)..............................................24

*United States v. Carter*,
  564 F.3d 325 (4th Cir. 2009) .............................................26

*United States v. Clemons*,
  2023 WL 3018426 (4th Cir. 2023) ...................................27

*United States v. Fernandez Sanchez*,
  46 F.4th 211 (4th Cir. 2022) .............................................23

*United States v. Gifford*,
  727 F.3d 92 (1st Cir. 2013) ...............................................15

*United States v. Heyward*,
  42 F.4th 460 (4th Cir. 2022) .............................................25

*United States v. Lewis*,
  958 F.3d 240 (4th Cir. 2020) ............................................27

*United States v. Lull*,
  824 F.3d 109 (4th Cir. 2016) ................................... *passim*

*United States v. Luskin*,
  926 F.2d 372 (4th Cir. 1991) ...................................... 21, 22

*United States v. Martinez-Melgar*,
  591 F.3d 733 (4th Cir. 2010) ..............................................2

*United States v. Moreland*,
  665 F.3d 137 (5th Cir. 2011) .............................................12

*United States v. Nixon*,
  418 U.S. 683 (1974).........................................................24

*United States v. Perkins*,
  850 F.3d 1109 (9th Cir. 2017) ..................................... 14, 15

*United States v. Peters*,
  60 F.4th 855 (4th Cir. 2023) ....................................... 19, 20

*United States v. Platter*,
  514 F.3d 782 (8th Cir. 2008) .............................................24

*United States v. Powell*,
  666 F.3d 180 (4th Cir. 2011) ....................................... 19, 20

*United States v. Pulley*,
  987 F.3d 370 (4th Cir. 2021) ..............................................7

*United States v. Quattrone,*
441 F.3d 153 (2d Cir. 2006) ...............................................................12

*United States v. Rajaratnam,*
719 F.3d 139 (2d Cir. 2013) ...............................................................15

*United States v. Schnittker,*
807 F.3d 77 (4th Cir. 2015) ...............................................................24

*United States v. Slocum,*
106 F.4th 308 (4th Cir. 2024) ...........................................................22

*United States v. Sowards*,
690 F.3d 583 (4th Cir. 2012) ..........................................................4, 12

**Statutes:**

18 U.S.C. § 2259A ........................................................................... 25, 27

18 U.S.C. § 2259A(c)...........................................................................27

18 U.S.C. § 3553(a)(1)..........................................................................27

18 U.S.C. § 3553(a)(7)..........................................................................27

18 U.S.C. § 3572(a) ..............................................................................27

18 U.S.C. § 3572(b) ..............................................................................27

# Introduction

A 20-year veteran law enforcement, Lowrance, applied for a warrant to search Glass' house by excluding that the allegation Glass possessed contraband came from his estranged spouse with a pending charge for a crime of dishonesty, who previously lodged an unfounded criminal accusation against Glass. The government does not dispute that the district relied on an incorrect view of "recklessness" to reject that the warrant-affiant more likely than not omitted the accuser's history from the application recklessly or that the estranged wife's latest allegation required corroboration to find probable cause. Rather, the government argues that: (1) the district court 's finding that Lowrance was not reckless by crediting Lowrance's excuse that he believed the accuser's history was irrelevant to the probable cause determination foreclose liability under *Franks v. Delaware*, 438 U.S. 154 (1978) and (2) the estranged wife's latest allegation was corroborated by Lowrance learning that years before Glass was merely investigated for similar reports. But the district court's findings on Lowrance's excuse and *mens rea* must be set aside as clearly erroneous and an officer learning an accused was merely investigated years ago does not constitute a meaningful corroborative step under this Court's precedent. Because the evidence establishes that Glass showed Lowrance recklessly omitted material information from his application by a

preponderance of the evidence, the Court should vacate his convictions and reverse the denial of his suppression motion.

Furthermore, the government's responses to Glass' alternative arguments—that the district court plainly erred by punishing Glass for three receipt offenses, when the jury verdict only found a single offense and abused its discretion by failing to explain its $5,000 assessment—should be rejected.

## I.     Glass established that his Fourth Amendment rights under *Franks v. Delaware* were violated.

Glass met his burden of demonstrating Lowrance's recklessness in omitting material information from his warrant application by a preponderance of the evidence. *United States v. Lull*, 824 F.3d 109, 113-14 (4th Cir. 2016) This Court should reject the government's arguments to the contrary.

### A. The extent of information Lowrance kept from the magistrate's review.

The government argues that the district court's findings that the affidavit included both April's identity as Glass' estranged wife and that the investigation into her 2016 accusation closed without an arrest are not clearly erroneous and thus should be deferred to. This is wrong.

The evidence clearly showed that the affidavit did not identify April as the estranged wife of the man she accused. *See United States v. Martinez-Melgar*, 591 F.3d 733, 738 (4th Cir. 2010) (factual findings "against the clear weight of the evidence considered as whole" are clearly erroneous). The plain text of the warrant

application, JA322-23, identified neither a marital connection or the animosity of April and Glass' estrangement. JA322-23. The government does not suggest otherwise, instead arguing that the reviewing magistrate "likely would have" inferred the accuser and the accused were estranged spouses. Govt. Br. at 38. But magistrates reviewing warrant applications only draw "reasonable inferences…from the material supplied" to them, *Illinois v. Gates*, 462 U.S. 213, 240 (1983), and sheer speculation is not a reasonable inference, *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177, 181 (4th Cir. 1998).

It is sheer speculation to conclude that an accuser is the accused's estranged wife by the fact that she left to go elsewhere after allegedly finding child pornography on the phone of someone with the same last name. The government seems to recognize this by asserting, "[Lowrance] stated enough in the affidavit to suggest that April and [ ] Glass likely were living apart." Govt. Br. at 39. But that misses the point: Lowrance should have disclosed that Glass was April's estranged husband, which provided her with motivations to lie for reasons of revenge and made her an unreliable reporter of events, as Lowrance well knew. But instead of disclosing that information, Lowrance submitted an application that allowed for a number of relationships other than spouses, like parent-child or siblings, which do not carry the same motivations for making false reports. The district court's finding

that Lowrance told the magistrate April was accusing her estranged husband is thus clearly erroneous and should be set aside.

Similarly, the government fails to refute Glass' argument that the district court clearly erred when it found Lowrance disclosed in the affidavit that investigators closed the 2016 investigation into Glass without an arrest. Again, the plain text of the warrant application does not state that the 2016 investigation closed without an arrest. JA322-23. The government does not contend otherwise, instead erecting a strawman. *See* Govt. Br. at 41. It argues that "a competent reader would have concluded that no convictions resulted from th[e] investigation[ ]." Govt. Br. at 41. But a "no convictions" result from an investigation and a "no arrest" result are not the same thing; "no arrest" means there was not even a determination that probable cause existed to believe Glass committed a crime. That's far different from "no conviction," which connotes a failure to find guilt beyond a reasonable doubt. The government's failure to provide a rational basis in the record to find that Lowrance's affidavit included the fact that the 2016 investigation closed without even an arrest reinforces Glass' argument that the district court clearly erred in finding otherwise. *See United States v. Sowards*, 690 F.3d 583, 589 (4th Cir. 2012) (dearth of evidence that an officer was trained in a subject rendered a finding he was so trained clearly erroneous).

Thus, the full extent of information Lowrance kept from the magistrate determining whether probable cause existed to search Glass' home based on April's accusation includes: April was Glass' estranged spouse with a pending charge for a crime of dishonesty, who prompted criminal investigations into Glass with similar allegations in 2016 and 2017, with the former closing without an arrest and the latter closing with an affirmative determination that April made an unfounded accusation. *See* Op. Br. at 24-26.

## B. The district court's reliance on an improper recklessness standard renders its findings on Lowrance's *mens rea* clearly erroneous.

The government implicitly concedes that the district court operated under an incorrect review of the recklessness standard. In his Opening Brief, Glass argues that an affiant acts recklessly if he omits information with subjective knowledge that doing so creates a substantial risk of misleading the reviewing magistrate judge, and he contended this standard can be met with circumstantial evidence. Op. Br. at 26-31. Contrary to this standard, the district court believed that recklessness required direct evidence that the affiant subjectively knew that omitting the information would lead the reviewing magistrate to issue a warrant unsupported by probable cause. *See* JA480 (the defendant must prove, without inferential reasoning, that "[Lowrance] fail[ed] to inform the Judge of facts he *subjectively* knew would negate probable cause"). The government does not dispute that Glass' construction of recklessness is correct, that the district court did not employ that

5

correct recklessness standard, or that the district court improperly excluded circumstantial evidence from its consideration. *Compare* Op. Br. at 26-31 *with* Govt. Br. at 42-44.[1]

Instead, the government argues that the district court using the incorrect recklessness standard is harmless because *Franks* liability cannot be found for three reasons. Govt. Br. at 43-44. First, the government reasons that Lowrance must believe April's history is relevant to the probable cause analysis for him to recklessly omit that history, but this Court must defer to the district court crediting Lowrance's explanation that he believed the information was irrelevant. Govt. Br. at 43. Second, it argues that negligent omissions do not violate *Franks* and the district court concluded that Lowrance was negligent by finding that his omissions were "at most…an 'honest mistake[.]'" Govt. Br. at 43-44 (quoting JA483). And third, the record contains no circumstantial evidence that Lowrance acted

---

[1] The government passingly states that the district court's version of the recklessness standard is "consistent" with a single-sentence observation that "reckless disregard can be established by evidence that a police officer failed to inform the judicial officer of facts he knew would negate probable cause." *Miller v. Prince George's County, MD*, 475 F.3d 621, 627 (4th Cir. 2007) (alterations omitted). But the government offers no response to Glass' argument that this sentence is non-binding dicta or that the observation merely conveyed one possible method of proving recklessness that is not exclusive. *See* Op. Br. at 30. *Miller* did not buck the controlling, long-established standard for "recklessness," which allows for circumstantial proof. And, in fact, this Court later expressly endorsed that the *Miller* sentence merely conveyed "[o]ne way of establishing reckless disregard[,]" *Lull*, 824 F.3d at 117.

recklessly in omitting April's history from his warrant application. Govt. Br. at 43. The government's harmlessness argument should be rejected because it relies on district court factual findings that cannot survive clear-error review. This Court only defers to factual findings that withstand clear-error review. *See United States v. Pulley*, 987 F.3d 370, 378 (4th Cir. 2021) (deferring to credibility determination that survived clear-error review). And there is evidence that Lowrance recklessly omitted April's history from his affidavit; in fact, the evidence compels this conclusion.

The district court crediting Lowrance's proffered explanation that he believed April's history was irrelevant is clearly erroneous for two separate and independent reasons. First, the district court used the incorrect recklessness standard to arrive at that finding. *See Raleigh Wake Citizens Ass'n v. Wake Cnty. Bd. of Elections*, 827 F.3d 333, 340 (4th Cir. 2016) ("Findings will be deemed clearly erroneous if … findings were made using incorrect legal standards." (quotations and citation omitted)). And second, Lowrance's explanation is both facially incredible and contradicted by objective evidence. *See Anderson v. City of Bessemer City, N.C.* 470 U.S. 564, 575 (1985) (a credibility finding can be clearly erroneous where "objective evidence [ ] contradicts the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it").

The district court credited Lowrance's explanation after reviewing the evidentiary landscape, but that landscape was warped by the court's mistaken exclusion of circumstantial evidence in asessing recklessness. According to the district court, Glass "offered no evidence to contradict [Lowrance's] testimony[,]" and "the Defendant can't beat something [i.e., Lowrance's testimony] with nothing." JA481. In doing so, the court limited the "evidence" it was willing to consider, *i.e.,* the things tending to prove or disprove Lowrance's recklessness, in accordance with its incorrect belief that Glass was required to present direct evidence that Lowrance knew his application would cause an illegal warrant to issue. JA480. For example, the district court erroneously disregarded circumstantial evidence of Lowrance's decades long law enforcement career as probative only of negligence in determining whether to believe Lowrance's claim that he did not see the relevance of information the court found "[p]lainly" was relevant to the probable cause analysis. JA482-83, JA485. Because the district court relied on an improper legal standard to credit Lowrance's explanation, this Court must set aside the credibility finding as clearly erroneous. *See Raleigh Wake Citizens Ass'n*, 827 F.3d at 340-45 (district court clearly erred in discrediting witness testimony under a mistaken impression of the plaintiff's burden of proof in a voting rights controversy).

Second, Lowrance's claim that he did not see how April's history was relevant to the probable cause analysis—when his application primarily relied on April's hearsay accusation—is facially incredible and contrary to his affidavit's probable cause presentation. Lowrance acknowledged that "the probable cause section of the affidavit" primarily relied on hearsay from April. JA229-32; JA322-23. It is long-established, black letter law that a warrant-affiant who relied on hearsay for probable cause must supply a "substantial basis for crediting" that hearsay. *Illinois v. Gates*, 462 U.S. 213, 241-42 (1983). And Lowrance was, at the time, a Detective Sergeant with 20 years of law enforcement experience, who held an advanced criminal justice certification, logged over 1,616 hours of continuing education, and assisted novice officers with drafting search warrant applications. JA211, JA219, JA283 JA321. Given Lowrance's experience and knowledge, no reasonable factfinder would credit his claim that he did not see the relevancy of April's criminal history or that she was a hostile estranged spouse who previously lodged an unfounded criminal accusation against Glass. *Compare Lull*, 824 F.3d at 116 (relying on the omitted information's "obvious" relevancy to reverse the district court's finding that the affiant's omissions were, at most, negligent).

Lowrance's claimed disbelief in the relevancy of the omitted information is also belied by his warrant application itself. Lowrance's affidavit specifically relied on police investigating a 2016 report that Glass possessed child

pornography, as well police investigating similar allegations against Glass in 2012. JA322-23. But Lowrance omitted from his application that police had investigated a 2017 report and found that Glass had no child pornography. *Id.* Lowrance's testimony that he believed a 2017 investigation, prompted by an allegation from April, into Glass possessing child pornography was irrelevant, when his affidavit relied on a 2016 investigation, prompted by an allegation from April, into Glass possessing child pornography is "so internally inconsistent [and] implausible on its face that a reasonable factfinder would not credit it." *Anderson*, 470 U.S. at 575.

Indeed, Lowrance's explanation is similar to the one this Court found actually constituted a "significant" fact favoring a recklessness finding. *See Lull*, 824 F.3d at 116-17. In *Lull*, the application relied on a confidential informant's information, but the affiant omitted facts about the informant's history after he determined those facts did not obviate the informant's reliability. *Id.* at 117. But the warrant requirement's "essential protection" is in requiring a detached magistrate, not the officer, to draw any reasonable inferences from the evidence, *Gates*, 462 U.S. at 240. The *Lull* affiant "usurp[ed] the magistrate's role" by presenting an affidavit that consciously excluded information detracting from the informant's reliability because he had determined the informant was sufficiently reliable. 824 F.3d at 117. Lowrance engaged in the same usurpation—he excluded

April's history from his affidavit because he had determined that it did not undermine her reliability and credibility.

The district court's erroneous recklessness standard likewise led the district court to conclude that Lowrance was negligent because his omissions were "at most…an 'honest mistake[.]'" JA483. But an honest mistake can be reckless. *E.g., Farmer v. Brennan*, 511 U.S. 825, 826 (1994) (a prison official can recklessly disregard a substantial risk of harm to an inmate, even if the official honestly believed his or her conduct would not result in harm to the inmate). The district court was thus incorrect in believing that an "honest mistake…is simply insufficient to" constitute recklessness. JA483. And its mistaken view as to what recklessness requires prevented it from properly analyzing whether Lowrance's actions rose above negligence, *i.e.,* were reckless. Since the district court relied on an improper view of the appropriate legal standard to conclude that Lowrance's honest mistake reflected negligence, this finding too must be set aside as clearly erroneous. *Jiminez v. Mary Washington College*, 57 F.3d 369, 379 (4th Cir. 1995).

The government's final argument is that there is simply no evidence to support a recklessness finding is incorrect. As will be explained in the next section, not only is there such evidence, the evidence compels such a conclusion.

**C. The evidence establishes that Lowrance more likely than not recklessly omitted facts undermining the accuser's reliability from the warrant application.**

With the district court's clearly erroneous findings set aside, this Court reviews whether the evidence, viewed in the light most favorable to the government, demonstrates that Lowrance more likely than not omitted the information on April's credibility and reliability with reckless disregard for whether doing so would make the affidavit misleading. *Sowards*, 690 F.3d at 587-594. The Court's consideration includes both evidence supporting the district court's ruling and "countervailing evidence[.]" *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011). The Court "draw[s] upon only reasonable inferences from the evidence to support" the ruling, and "cannot 'credit inferences within the realm of possibility when those inferences are unreasonable.'" *Id.* at 149 (quoting *United States v. Quattrone*, 441 F.3d 153, 169 (2d Cir. 2006)). *Accord Davis v. City of Little Rock*, 122 F.4th 326, 329 (8th Cir. 2024) ("This court does not accept unreasonable inferences or sheer speculation as fact." (alterations omitted)).

The government resists concluding that Lowrance omitting April's history was done recklessly by arguing his omissions are less serious than the omissions this Court found were recklessly made in *Lull* and summarily denying that

Lowrance's affidavit included a deceptive pattern. Govt. Br. at 33-46.[2] The former point is immaterial, while the latter point seeks an unreasonable inference of good faith unsupported by the record. And neither argument should lead this Court to affirm the district court's recklessness finding, when the evidence—viewed in its totality and in favor of the government—demonstrates that Glass met his burden of showing Lowrance omitted information from his affidavit with reckless disregard for whether doing so would be misleading.

The government highlights factual differences between Lowrance and the *Lull* affiant without addressing the salient point binding the two. The government argues that Lowrance did not know if April lied to law enforcement two years earlier when she accused Glass of having contraband, whereas the *Lull* affiant knew that his informant had lied about the whereabouts of $20 in leftover buy money in the hours before the warrant application was submitted. Govt. Br. at 44-45. But while it may be debatable whether it's more egregious to omit an informant lying about stealing $20 or more egregious to omit April previously lodged an unfounded allegation against her husband, the question is not the relative egregiousness of omitting particular information. The question is whether the affiant "omitted the information with reckless disregard of whether it would make

[2] The government's argument also relies on deference to the district court's findings on Lowrance's *mens rea*, Govt. Br. at 33-46, but, as already explained, those findings must be set aside as clearly erroneous.

the affidavit misleading." *Lull*, 824 F.3d at 115. And Lowrance's actions share the same characteristics this Court relied on to find the *Lull* affiant was reckless: He was an experienced law enforcement officer who relied on hearsay from an informant to establish probable cause, while electing to withhold from the magistrate information he possessed that was obviously relevant to whether the informant was reliable and trustworthy.

The government also rejects—in conclusory fashion—that Lowrance's affidavit presents a misleading picture by including the facts he knew would bolster the existence of probable cause, while omitting facts he knew undercut probable cause and thus made issuance of a warrant uncertain. It fails to provide any analysis disputing this misleading picture or address Glass' reliance on a Ninth Circuit decision holding similar tailoring violated *Franks*. *Compare* Op. Br. at 36-37 (discussing *United States v. Perkins*, 850 F.3d 1109 (9th Cir. 2017)) *with* Govt. Br. at 46 (no response). The government contends that Lowrance's good faith is demonstrated by the fact he "check[ed] both April's and Glass's criminal histories" to assess the credibility of April's allegations, Govt. Br. at 39, but it ignores that Lowrance cherry-picked details from those criminal histories, excluding from the magistrate's consideration facts casting doubt on April's credibility and the reliability of her allegations. Far from supporting the government's position, Lowrance's use of April's and Glass' criminal histories buttresses Glass' argument

that Lowrance recklessly withheld information from the magistrate in order to beef up the odds that a warrant would issue.

The evidence does not permit finding that Lowrance's omissions were "an act of mere negligence or an innocent mistake." *Lull*, 824 F.3d at 117. All three factors courts rely on to find recklessness—the absence of a plausible justification for excluding the information, the excluded information's obvious relevancy to the probable cause determination, and the presence of additional fraudulent intent indicators—are present here. Op. Br. at 32 (citing *Lull*, 824 F.3d at 111-20; *Perkins*, 850 F.3d at 1116-19; *United States v. Gifford,* 727 F.3d 92 (1st Cir. 2013); *United States v. Rajaratnam*, 719 F.3d 139, 154-55 & n.18 (2d Cir. 2013)). April's allegation was the crux of Lowrance's assertion of probable cause. The affidavit presented only facts bolstering probable cause, while keeping from the magistrate key facts undercutting probable cause's existence. The omitted information—that April's allegation against Glass in 2016 was closed without an arrest; her criminal history with a charge for a crime of dishonesty; her animus towards Glass, her estranged husband; and that she previously, in 2017, made a similar unfounded allegation against her husband to law enforcement, is obviously critical to the magistrate's probable cause determination. Lowrance offered no plausible justification for his decision to exclude the information. He was intimately familiar with all the omitted information—he ran the criminal history, spoke with an officer

who stopped April for larceny investigation, he received multiple emails from April expressing her ire towards her estranged husband, and he assisted with drafting the warrant application in the 2017 investigation, executed that ensuing warrant that turned up no contraband, and spoke with the 2017 investigation's lead officer shortly before submitting the instant affidavit. And Lowrance was a Detective Sergeant with 20 years of law enforcement experience, who held an advanced criminal justice certification and assisted novice officer with drafting warrant applications.

This Court should conclude that Glass satisfies the intentionality prong of the *Franks* test because, at the very least, Glass has shown by a preponderance of the evidence that Lowrance omitted the information with reckless disregard of whether it would make the affidavit misleading to the magistrate.

**D. When April's history is included, probable cause does not exist based on her accusation and the fact Glass was merely investigated for similar accusations in the past.**

Lowrance's omissions satisfy the materiality prong of the *Franks* test if Glass shows by a preponderance of the evidence that inclusion of the omitted material vitiates probable cause. *Lull*, 824 F.3d at 117-20. Here, the warrant authorized police to search Glass' Statesville residence for evidence of child pornography crimes. JA319-20. So probable cause for this search does not exist if "the known facts and circumstances" do not "warrant a man of reasonable

prudence" in believing that evidence of a child pornography crime will be found in Glass' Statesville residence. *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

The government takes a divide-and-conquer approach to the omitted information that argues each piece of information, individually, does not affect the probable cause determination. Govt. Br. at 47-50. This is not how the materiality of an affiant's omissions is determined. The Court "consider[s] the 'totality of the circumstances[,]' evaluating the affidavit as a whole and all the circumstances set forth within." *Lull*, 824. F.3d at 118. Under that measure, claiming that the 2016 investigation closing without an arrest "would not measurably decrease the evidence of probable cause" or that April's pending larceny charge is immaterial to probable cause's existence does not answer the materiality question. Govt. Br. at 47-50. Lowrance's omissions are material because they gave April's allegations more weight than they deserved and suggested corroboration that does not exist.

The government concedes that the credibility of April's information is undermined when the omitted information is considered. *See* Govt. Br. at 49 (April's 2019 information is not "sufficiently" "undermine[d]" to vitiate probable cause). And the government doesn't dispute that that April's allegation alone does not amount to probable cause. *Compare* Op. Br. at 41-42 (reliability concerns required some corroboration) *with* Govt. Br. at 50 (April's information plus Glass' criminal history supplied probable cause). Rather, the government argues that

probable cause exists from April's information itself, Brown—the Virginia officer who investigated April's 2016 and, at Lowrance's request, took her in-person statement for her latest allegation—testifying that she found April's report credible, and the fact Glass was investigated for similar reports three times in the past. The Court should reject this argument because it relies on information that cannot be considered and, further, the fact that Glass was merely investigated for reports similar to child pornography possession offers little, if any, corroboration for April's allegation.

The "materiality" prong of the *Franks* analysis limits the government to establishing probable cause based only on the information contained in the warrant application. *Lull*, 824 F.3d at 112-13 &119 n.3 (information that was not included in the affidavit, including a telephone call and recognition of the defendant's voice during the controlled buy, could not be considered in analyzing *Franks*' materiality prong). Lowrance's affidavit did not state that Glass was arrested in 2012 or that Brown found April's report credible. JA321-22. *See also* Govt. Br. at 17 (citing testimony from the *Franks* hearing for the proposition that Brown found April's account credible). Accordingly, that Glass was arrested in 2012 and Brown found April's report credible cannot be considered in determining whether Lowrance's affidavit established probable cause.

The government's argument for probable cause thus boils down to a claim that April's allegation was corroborated by three prior, similar reports that resulted in a police investigation, including one that police determined involved an unfounded accusation by April. But the fact police merely investigated Glass in the past offers little, if any, corroboration for April's allegation. Probable cause cannot turn on the tenacity of an accuser who has demonstrated her unreliability. In other words, April's present accusation does not become reliable and trustworthy simply by the number of times she has launched similar accusations.

This Court's precedent also precludes giving prior investigations any import. The Court has repeatedly admonished that a suspect's history of arrests or old convictions must generally play a very limited role even in the far-less-demanding context of reasonable suspicion. *E.g., United States v. Peters,* 60 F.4th 855 (4th Cir. 2023), *United States v. Powell*, 666 F.3d 180 (4th Cir. 2011). For example, in *Peters*, an officer stopped a defendant for possibly trespassing at a housing complex absent reasonable suspicion, where the officer had received a tip from a confidential informant that the defendant was selling drugs at the housing complex and knew the defendant had an 8-year-old arrest for trespassing. 60 F.4th at 865-66. This Court found that learning about an old trespass arrest was not a "notable step[ ] to corroborate" and cautioned against diluting Fourth Amendment protections for mere arrestees by permitting criminal history to play an outsized

role in the reasonable-suspicion context. *Id.* Similarly, the Court has rejected that officers had reasonable suspicion that an individual involved in a traffic stop may be armed and dangerous, where he misrepresented the validity of his license and had a prior armed robbery arrest. *Powell*, 666 F.3d at 184-89.

The magistrate would not have looked for significant corroboration when the misleading affidavit presented April as an honest citizen-informant with no ulterior motive reporting a crime to law enforcement. But correcting the affidavit to include the misleading omissions transformed the honest citizen into an estranged wife with a vendetta and a pending crime-of-dishonesty charge who had previously lodged a similar, unfounded allegation against her husband. Under the totality of these circumstances, a reasonably prudent person would not believe the estranged wife's latest accusation without some meaningful corroboration of her allegation. Because the affidavit includes no such corroboration, Glass established the materiality prong of the *Franks* test by a preponderance of the evidence.

\*   \*   \*

Because Glass has shown by a preponderance of the evidence that Lowrance omitted information from the search warrant affidavit with at least a reckless disregard for whether these omissions made the application misleading, and because these omissions were material to a finding of probable cause, Glass established a violation of his Fourth Amendment rights under *Franks v. Delaware*.

As a result, the district court erred in denying Glass' suppression motion and that ruling should be reversed, Glass' conviction and sentence vacated, and the case remanded for further proceedings.

## II. The district court plainly erred by punishing Glass for committing three receipt offenses, when Glass was only convicted of one offense.

In his Opening Brief, Glass argues that, in violation of the Double Jeopardy Clause, the district court entered judgment on three receipt offenses, when he was only convicted of a single offense. Op. Br. at 45-49. The government responds that "no basis exists for disturbing the jury's verdict" if this Court can "reasonabl[y] infer[ ]" that the jury found beyond a reasonable doubt that Glass received three distinct images. Govt. Br. at 54. The government offers no authority for this proposition, *see id.*, which is itself a reason to reject it. But there are three additional reasons to reject the government's argument: (1) it is nonresponsive, (2) it suggests that the prosecution presenting evidence that could support a factual finding establishes that the jury made such a finding, and (3) adopting the argument would improperly impinge on the Executive's prosecutorial discretion.

First, the Court need not "disturb the jury's verdict" to agree with Glass' argument that the Double Jeopardy Clause prohibits his sentence. Glass argues that his sentence is the problem, not the jury's verdict. Op. Br. at 45-49. Prosecutors can charge "constitutionally identical offenses" in different counts. *United States v. Luskin*, 926 F.2d 372, 378 (4th Cir. 1991). Courts can send those multiplicitous

counts to the jury for a verdict. *Id.* And juries can return a guilty verdict on multiple counts charging the same offense. *Ball v. United States*, 470 U.S. 856, 865 (1985). What the Double Jeopardy Clause prohibits is a court entering judgment on more than one offense when presented with a guilty verdict on multiplicitous counts. *Id. See also United States v. Slocum,* 106 F.4th 308, 316 (4th Cir. 2024) (double jeopardy violation occurred when the court "convicted and sentenced [the defendant] twice for the same offense charged in a multiplicitous indictment"). Glass' jury could (and did) return a guilty verdict on three counts of receiving child pornography for receiving "any" visual depiction on or about February 4, 2020, in Iredell County. It is the court entering judgment for three receipt offenses that Glass asks this Court to disturb.

Second, the government asks this Court not to find a Double Jeopardy error by applying a watered-down harmless error analysis for a jury charge omitting an element. *See* Govt. Br. at 54-55. The government argues that this Court can conclude that the jury found Glass received three distinct videos because it presented sufficient evidence to permit such a finding. Govt. Br. at 54-55. This is similar to the harmless error analysis for omitted element, which asks if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty but for the element's omission from the charge. *Neder v. United States*, 527 U.S. 1, 18 (1999).

There are multiple problems with the government's reliance on a diluted harmless-error analysis. First, the government misuses the harmless-error standard to argue no error occurred, when that standard assesses an error's impact. Second, the mere existence of evidence permitting a jury to make a finding does not establish such a finding was made beyond a reasonable doubt. *See Neder*, 527 U.S. at 9 (omitting an element from the jury's consideration is not harmless if the defendant contested  the element and a rational juror could harbor a reasonable doubt as to its existence).[3] And third, the prosecution's case presenting sufficient evidence to support finding that a defendant committed three violations of the same statute does not license a court to enter judgment on three offenses. This premise raises the third reason to reject the government's argument—the Executive's prosecutorial discretion prerogatives.

---

[3] The government fails to argue that its proof clears *Neder*'s hurdle, *see* Govt. Br. at 54-55, so it has waived that argument. *United States v. Fernandez Sanchez*, 46 F.4th 211, 219 (4th Cir. 2022). But, in any event. Glass contested that he received child pornography, JA1051-1063. The government presented no direct evidence that Glass ever possessed the phone containing the child pornography. *See* Op. Br. at 12-15. There was evidence that other people had access to the LG phone containing the contraband, JA739-742; JA986-988, and that this phone's associated email account was accessed at Glass' home when he was working, JA1012-1017, as well as evidence casting doubt on the reliability of the government's forensics as a "stripchat" website was visited while the phone was in law enforcement's custody, JA959-960.

The Executive Branch, not the Judicial Branch, decides what to prosecute. *See United States v. Nixon*, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"). It is within the prosecution's prerogative to levy multiplicitous charges, *Ball*, 470 U.S. at 865, and "prove a defendant's liability for one criminal offense using multiple theories of guilt[,]" *United States v. Platter*, 514 F.3d 782, 786 (8th Cir. 2008). Indeed, prosecutions routinely rely on evidence that the defendant engaged in criminal behavior, which it did not formally charge, to prove the charge it did levy. *E.g., United States v. Bowie*, 232 F.3d 923 (D.C. Cir. 2000) (where defendant was charged with possessing counterfeit notes on a particular day, the government could use evidence that the defendant used counterfeit notes in the weeks before the charged date to establish the charged possession). Because the prosecution decides what charges to pursue and may rely on multiple theories of guilt to establish a single offense, the simple presentation of evidence of multiple crimes by the defendant cannot justify a court entering judgment for multiple offenses.

What the government does concede amounts to a plain violation of the Double Jeopardy Clause. The government does not dispute that this Court's precedent requires distinct images for multiple receipt offenses. *Compare* Op. Br. at 46 (citing *United States v. Schnittker*, 807 F.3d 77 82-83 (4th Cir. 2015)) *with* Govt. Br. at 52-59. It also admits that its "indictment did not identify [a particular

image]" for any receipt count and the jury was not asked to "to find that Glass received a different image of child pornography" to return a guilty verdict on three counts. Govt. Br. at 55. These concessions demonstrate that Glass was neither charged, nor found by a jury to have committed three receipt offenses, yet the district court punished him for committing three offenses. And because "well-settled [controlling] authority provides the answer[,]" *United States v. Heyward*, 42 F.4th 460, 465 (4th Cir. 2022), this error is plain.

Contrary to the government's suggestion otherwise, the Double Jeopardy error effects Glass' substantial rights and seriously affects the fairness, integrity, and public reputation of judicial proceedings. *See* Govt. Br. at 58-59, "At the very least, the district court must vacate the $100 special assessment for each multiplicitous conviction[.]" *United States v. Ajayi*, 808 F.3d 1113, 1124 (7th Cir. 2015) (error in entering multiplicitous convictions satisfies third and fourth prongs of plain-error review). Accordingly, Glass' sentences should be vacated and the case remanded for resentencing.

### III. The district court failed to provide an individualized explanation for its $5,000 assessment.

The government does not dispute that the district court provided a single-sentence explanation for imposing a $5,000 assessment under 18 U.S.C. § 2259A. *Compare* Op. Br. at 50-52 *with* Govt. Br. at 61-63. Nevertheless, the government

argues that the $5,000 assessment can be affirmed by this Court relying on findings never made by the district court and engaging in speculation. This is incorrect.

The district court did not find that Glass' recidivism risk warranted a $5,000 assessment or that Glass' earnings the year prior to receiving a 15-year prison sentence demonstrated he could pay a $5,000 special assessment. *See* JA1309-11. But the government invites this Court to make such findings. It argues that the district court "could" have relied on Glass' recidivism risk to find "a modest but significant assessment was appropriate." Govt. Br. at 62. And it mischaracterizes the record to argue that the district court found that Glass' earnings supported a $5,000 special assessment. The government also mischaracterizes the record by claiming that the district court found Glass "'could and should be able to pay' a $5,000 assessment[.]" Govt. Br. at 62 (quoting JA1310). The district court's actual finding was only that "[Glass] "could and should be able to pay *some* assessment[,]" JA1310 (emphasis added). The findings actually made by the district court—that some modest but significant assessment was appropriate—fails to adequately explain why it settled on a $5,000 amount. *See United States v. Carter*, 564 F.3d 325, 328-29 (4th Cir. 2009) (sentencing explanation that could apply to any sentence is procedurally unreasonable).

The government also argues that this Court should assume that the district court considered Glass' obligation to make $6,000 in restitution in arriving at its

$5,000 assessment amount because both financial penalties are in the same judgment. Govt. Br. at 63. The government offers no authority for such an assumption, which is contrary to this Court's precedent that it does "not guess at the district court's rationale" or "search[ ] the record…for clues that might explain a sentence." *United States v. Lewis*, 958 F.3d 240, 244 (4th Cir. 2020) (quotations and citation omitted). It is "the district court's obligation to explain its rationale in the first instance[,]" *id.*, and the district court failed to do so here.

Congress requires district courts to consider the defendant's history and characteristics, the defendant's earning capacity and financial resources, and the need to provide restitution to any victims of the offense. 18 U.S.C. § 2259A(c) (citing 18 U.S.C. § 3553(a)(1) and (7); 18 U.S.C. § 3572(a)-(b)). The district court's explanation that Glass "could and should be able to pay some assessment" is inadequate to explain its $5,000 judgment, so the assessment should be vacated and remanded for further consideration. *United States v. Clemons*, 2023 WL 3018426 (4th Cir. 2023) (per curiam) (district court's failure to consider or make findings on the defendant's restitution obligation before imposing an assessment under 18 U.S.C. § 2259A).

## Conclusion

Because Glass' Fourth Amendment rights were violated under *Franks*, this Court should vacate his convictions, reverse the district court's denial of his suppression motion, and remand for further proceedings. Alternatively, the Court should vacate Glass' sentence and remand for a resentencing due to the Double Jeopardy violation and inadequate sentencing explanation.

Date: March 17, 2025

Respectfully submitted,

John G. Baker,
Federal Public Defender for the
Western District of North Carolina

/s/Melissa S. Baldwin
Melissa S. Baldwin
Assistant Federal Public Defender
One Page Avenue, Suite 210
Asheville, NC 28801
(828) 232-9992
Melissa_Baldwin@fd.org
*Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.   This brief complies with type-volume limits because, excluding the parts of
     the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure
     statement, table of contents, table of citations, statement regarding oral
     argument, signature block, certificates of counsel, addendum, attachments):

     [ X ] this brief contains [*6,358*] words.

     [    ] this brief uses a monospaced type and contains [*state the number of*] lines
     of text.

2.   This brief complies with the typeface and type style requirements because:

     [ X ] this brief has been prepared in a proportionally spaced typeface using
     [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

     [    ] this brief has been prepared in a monospaced typeface using [*state name
     and version of word processing program*] with [*state number of characters
     per inch and name of type style*].


Dated:  <u>March 17, 2025</u>            <u>/s/ Melissa S. Baldwin</u>
                                         *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 17th day of March, 2025, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Amy Elizabeth Ray
Assistant U.S. Attorney
OFFICE OF THE UNITED STATES ATTORNEY
United States Courthouse
100 Otis Street, Room 233
Asheville, NC 28801
(828) 271-4661

*Counsel for Appellee*

/s/ Melissa S. Baldwin
*Counsel for Appellant*